In the Matter of the Paternity of: H.J.B., by next friend, Kim SUTTON, Appellant–Respondent,

v.

Brandi Nichole BOES (deceased) and Jeffrey Lynn Boes (deceased), Appellees–Petitioners.

No. 26A01–0502–JV–51.

Court of Appeals of Indiana.

June 14, 2005.

Steven L. Whitehead, Princeton, for Appellant.

Lisa A. Moody, Princeton, for Appellees.

## OPINION

VAIDIK, J.

### Case Summary

H.J.B., whose biological mother and statutorily presumed father are deceased, by his maternal grandmother as his guardian and next-friend, appeals the trial court's dismissal of his Verified Petition to Disestablish Paternity and Request for DNA Testing. First, we hold that the Indiana Code does not allow the filing of a petition to disestablish paternity. In addition, the filing of such a petition would be contrary to public policy. For these reasons, we affirm the trial court.

### Facts and Procedural History

H.J.B. was conceived in early May 2002 and was born on January 27, 2003. H.J.B.'s mother is Brandi Boes. At the time of conception, she was not married, but during the course of the pregnancy, in August 2002, Brandi married Jeffrey Boes. Brandi and Jeffrey are listed on H.J.B.'s birth certificate as the mother and father respectively. On November 3, 2003, Brandi and Jeffrey were killed in a murder-suicide committed by Joseph Sutton, Brandi's father. Following Brandi's and Jeffrey's death, Kim Sutton, Brandi's mother and H.J.B.'s grandmother, was granted temporary custody of H.J.B. in January 2004, with no objection from Harold and Beverly Boes ("the Boeses"), the parents of Jeffrey and the paternal grandparents of H.J.B. The Boeses and other paternal relatives of H.J.B. have exercised visitation with H.J.B., although the frequency and extent of these visits are not set forth in the record. On June 1, 2004, Kim was appointed as guardian over the person and estate of H.J.B. by Order of the Gibson Circuit Court.

On June 11, 2004, H.J.B., by next friend and guardian Kim, filed a Verified Petition to Disestablish Paternity and Request for DNA Testing. In support of this Petition, Kim, in an affidavit, informed the court that Jeffrey was not H.J.B.'s father because, according to Kim, Brandi was at least four months pregnant when she began to date Jeffrey and the two married one month later. Kim further explained in her affidavit that Brandi told Kim that the identity of H.J.B.'s father "was unknown to [Brandi] and that the father was from Evansville." Appellant's App. p. 16. Kim also submitted an affidavit from Brandi's obstetrician, Dr. Bruce Brink, Jr., who treated her throughout her pregnancy and delivery of H.J.B. In his affidavit, Dr. Brink explained that during the entire course of Brandi's pregnancy, she told Dr. Brink that "the identity of the father of [H.J.B.] was unknown to [Brandi]." *Id.* at 13–14.

Jeffrey's Estate filed a Motion to Dismiss the Petition to Disestablish Paternity and Request for DNA Testing. In January 2005, the trial court, in a one sentence Order,[1] granted the Motion to Dismiss. H.J.B. now appeals.

### Discussion and Decision

On appeal, H.J.B. argues that he should be permitted to disestablish paternity of

---

1. We would remind counsel for Appellant of the obligation under Indiana Appellate Rule 46(A)(10) to include a copy of the appealed-from order in the Appellant's Brief. The Appellant included a copy of the Order only in the Appellant's Appendix.

the man that the law, as set forth in Indiana Code § 31–14–7–1, presumes to be H.J.B.'s father after that father's death. Indiana Code § 31–14–7–1 states in pertinent part:

A man is presumed to be a child's biological father if:

(1) the:

(A) man and the child's biological mother are or have been married to each other; and

(B) child is born during the marriage . . .;

* * * * *

or

(3) the man undergoes a genetic test that indicates with at least a ninety-nine percent (99%) probability that the man is the child's biological father.

Ind.Code § 31–14–7–1. Because Brandi and Jeffrey were married to each other and H.J.B. was born during the marriage, Jeffrey is presumed to be H.J.B.'s father. Indiana law allows a child to file a paternity action. *See* Ind.Code § 31–14–4–1. Kim, acting as H.J.B.'s next friend and guardian, brought this paternity action under Indiana Code § 31–14–5–2, which provides in pertinent part: "A person less than eighteen (18) years of age may file a [paternity action] petition if the person is competent except for the person's age. . . ."

The Indiana Code has no provision for the filing of an action to disestablish paternity. The statutes governing paternity actions, found in Article 14 of Title 31 of the Indiana Code assume establishing, as opposed to disestablishing, paternity. *See, e.g.,* Ind.Code § 31–14–10–1 ("Upon finding that a man is the child's biological father, the court shall . . . conduct a hearing to determine the issues of support, custody, and visitation."); § 31–14–11–1.1 ("In a paternity proceeding, the court shall issue a temporary order for child support if there is clear and convincing evidence that the man involved in the proceeding is the child's biological father."); § 31–14–11–5 ("The support order . . . must include the period dating from the filing of the paternity action."). This distinction was noted by this Court in a different context in *Estate of Lamey,* 689 N.E.2d 1265 (Ind. Ct.App.1997), *trans. denied.* In *Lamey,* we examined a portion of Indiana's probate code that concerned the inheritance rights from the paternal side of a child born out of wedlock. *See* Ind.Code § 29–1–2–7(b) (providing that "[f]or the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if one (1) of the following requirements is met: . . . paternity . . . has been established by law in a cause of action that is filed: (A) during the father's lifetime; or (B) within five (5) months after the father's death") (current version). We held that this "provides a limited opportunity for an illegitimate child . . . to establish paternity in a decedent, not an avenue for third parties to disestablish paternity following a presumptive father's death." *Lamey,* 689 N.E.2d at 1268. Similarly, the provisions in Title 31, Article 14 provide the means to establish paternity, not to disestablish it.[2]

---

**2.** Our holding does not affect the right to establish paternity in a situation where a father already exists, thus indirectly disestablishing paternity of that father. *See K.S. v. R.S.,* 669 N.E.2d 399, 400–01 (Ind.1996) (holding that under Indiana law a man who claims to be the biological father of a child born during the marriage of the child's mother to another man may bring a paternity action while the mother's marriage is still intact); *In re Paternity of S.R.I.,* 602 N.E.2d 1014, 1016 (Ind.1992) (stating that "a puta-

The soundness of the public policy underlying our holding is illustrated by the facts of this case: where the child's deceased mother claimed during life to be unsure of the biological father's identity, where no other man has been identified as a potential father or has sought to establish paternity of H.J.B., and where there is no showing that that other man, assuming he exists, knows of H.J.B.'s existence.[3] Indeed, our supreme court has heretofore held that in a dissolution proceeding in which the mother and father of a child are attempting to stipulate or otherwise agree that a child is not a child of the marriage, "it is well within the discretion of the trial court to withhold approval [of such a stipulation] until paternity has been established in another man." *Russell v. Russell*, 682 N.E.2d 513, 518 (Ind.1997). We likewise think that it would be appropriate for the trial court to withhold the disestablishment of a deceased father's paternity until paternity has been established in another man. Were we to hold otherwise, our courts could create a "filius nullius,"[4] which is exactly what paternity statutes were created to avoid. *See D.R.S. v. R.S.H.*, 412 N.E.2d 1257, 1261 (Ind.Ct.App. 1980). Being declared a "filius nullius" would carry with it countless "detrimental financial and emotional effect[s]." *Johnson Controls, Inc. v. Forrester*, 704 N.E.2d 1082, 1085 (Ind.Ct.App.1999), *trans. denied.*

The emotional effect on H.J.B., who is presently two years old, of being declared a "filius nullius" after having the only mother and father he has ever known murdered by his grandfather who then killed himself is too apparent to mention. The facts in the record indicate that Jeffrey desired to be H.J.B.'s father and indeed was providing for H.J.B. in that capacity at the time of Jeffrey's untimely demise. In addition, the record reflects that the Boeses and other surviving paternal relatives have maintained contact and engaged in visitation with H.J.B. since Jeffrey's death. To declare now that H.J.B. is not Jeffrey's son, and consequently not a family member of the Boeses, would undoubtedly produce a negative emotional effect on H.J.B. *See also In re Paternity of S.R.I.*, 602 N.E.2d 1014, 1016 (Ind.1992) (observing that the proper identification of parents should prove to be in the best interests of the child for medical or psychological reasons). Additionally, H.J.B. would suffer a financial impact in that he would not be entitled to governmental or other benefits he receives as Jeffrey's son.

In sum, the trial court properly dismissed the Verified Petition to Disestablish Paternity and Request for DNA Testing filed by H.J.B., by next friend and guardian Kim. Jeffrey is, under Indiana law, the father of H.J.B. The paternity laws of this state may not be used in such a way that a child is legally declared to have no father. H.J.B. has already, at the age of two, lost his mother and father to murder at the hands of his grandfather. Allowing the disestablishment of Jeffrey's paternity would undoubtedly bring additional negative effects on H.J.B., who has

tive father may establish paternity without regard to the mother's marital status").

**3.** Nothing in this opinion should be read as a determination by us that Jeffrey is not H.J.B.'s biological father or a denunciation of Jeffrey's role as H.J.B.'s father during Jeffrey's lifetime. In fact, the record suggests quite the opposite—that Jeffrey was H.J.B.'s father in every sense of the word. Indeed, the only evidence suggesting that Jeffrey is not the biological father is the pair of affidavits submitted by Kim, clearly an interested party in this case.

**4.** This is a Latin phrase meaning "son of nobody." Black's Law Dictionary 661 (8th ed.2004).

already sustained a tremendous loss. For all of these reasons, we affirm the trial court.

Affirmed.

SHARPNACK, J., and MAY, J., concur.