In re the PATERNITY OF E.M.L.G.,
R.L.J., J.A.J., and N.A.H.

No. 71A04–0609–JV–490.

Court of Appeals of Indiana.

March 8, 2007.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

James A. Masters, Nemeth, Feeney & Masters, P.C., South Bend, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

This is an appeal regarding four consolidated cases. The State appeals from the St. Joseph Probate Court's denial of its motion to correct error in each of the four cases. At issue is whether the trial court properly granted four putative fathers' requests for genetic testing to disestablish paternity under Indiana Code section 31–14–6–1.[1] Concluding that each putative father did not timely request genetic testing under Indiana Code section 16–37–2–2.1, and therefore was already deemed the legal father, we reverse and remand.

### Facts and Procedural History

On October 25, 2006, this court consolidated the four actions below for purposes of this appeal. In each of these cases, the putative father signed a paternity affidavit at the hospital when the child was born. The affidavits were signed on April 25, 2004; May 2, 2005; September 30, 2005; and February 14, 2006. In each case, the State brought an action to establish a child support order based on the father's execution of the paternity affidavit. Each hearing was conducted more than sixty days after the father had executed a paternity affidavit. Nonetheless, at the child support hearings, each putative father requested the court to order genetic testing. Even though these were child support hearings, the trial court stated that it treated such support hearings as hearings to establish paternity. Tr. p. 141. The trial court granted each father's request for genetic testing and ordered the State to pay for the tests, subject to reimburse-

ment if the man was determined to be the father, or by the mother if the man was excluded as the father.

The State filed motions to correct error for each case, which were subsequently denied by the trial court. This appeal ensued. Additional facts will be added as necessary.

### Discussion and Decision

■ The State contends that the trial court erred in denying its motions to correct error. We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1055 (Ind.2003). An abuse of discretion occurs only when the trial court's action is clearly erroneous, that is, against the logic and effect of the facts before it and the inferences that may be drawn therefrom. *In re Marriage of Dean*, 787 N.E.2d 445, 447 (Ind.Ct.App.2003), *trans. denied.*

However, interpretation of a statute is a question of law reserved for the courts. *Blake v. State*, 860 N.E.2d 625, 627 (Ind. Ct.App.2007) (citation omitted). Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.* In determining whether the trial court properly interpreted the intent of the statute, we will first determine whether the legislature has spoken clearly and unambiguously on the point in question. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 947 (Ind.2001) (citation omitted). "We will not read into a statute that which is not the manifest intent of the legislature." *Robinson v. Gazvoda*, 783 N.E.2d 1245, 1250 (Ind.Ct.App.2003), *trans. denied* (citation omitted). For this reason, it is as important to recognize not only what a statute says, but also what a

---

1. We find this issue dispositive and therefore do not address the State's argument that the trial court improperly ordered the State to pay for the genetic tests.

statute does not say. *See Clifft v. Ind. Dep't of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995).

The trial court in the proceedings below deemed that the request for testing was sufficient under Indiana Code section 31–14–6–1 (1998), which provides, that "[u]pon the motion of any party, the court shall order all of the parties to a paternity action to undergo blood or genetic testing." In explaining its decision, the trial court said, "[t]he paternity affidavit was signed and so the prosecuting attorney's office labels these as a support matter, but I treat them as an establishment [of paternity]." Appellant's App. p. 141. Therefore, we first consider whether these proceedings were indeed proceedings to establish paternity.

■ Indiana Code section 31–14–2–1 (1998) provides for two ways to establish paternity: "(1) in an action under [article 14 governing proceedings for establishing paternity] *or* (2) by executing a paternity affidavit in accordance with IC 16–37–2–2.1." (Emphasis added). Furthermore, Indiana Code section 31–14–7–3 (2001) provides that "[a] man is a child's legal father if the man executed a paternity affidavit in accordance with Indiana Code Section 16–37–2–2.1 and the paternity affidavit has not been rescinded or set aside under Indiana Code Section 16–37–2–2.1." To rescind or set aside a paternity affidavit, a putative father may "within sixty (60) days of the date that a paternity affidavit is executed … file an action in a court with jurisdiction over paternity to request an order for a genetic test." Ind.Code § 16–37–2–2.1(h) (2001).[2]

All four of the fathers admittedly signed a paternity affidavit pursuant to this statute and did not rescind or set aside the affidavit within the sixty-day time frame provided for under Indiana Code section 16–37–2–2.1. Therefore, under the plain, unambiguous language of the statute, paternity was already established.

■ Indiana Code section 16–37–2–2.1(i) further provides that "[a] paternity affidavit that is properly executed under this section may not be rescinded more than sixty (60) days after the paternity affidavit is executed unless a court has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit." None of the putative fathers has alleged fraud, duress, or material mistake of fact. Rather, the trial court rescinded the paternity affidavits on the grounds that the men were allegedly not aware of the legal ramifications of the document when they signed the paternity affidavits. This is not a valid statutory reason for setting aside the paternity affidavits.

■ Additionally, as we have previously noted, "[t]he Indiana Code has no provision for the filing of an action to disestablish paternity." *In re Paternity of H.J.B.,* 829 N.E.2d 157, 159 (Ind.Ct.App.2005). Rather, the Indiana statutes governing paternity actions, found in Article 14 of Title 31 of the Indiana Code provide a means to establish paternity, not to disestablish it. Our General Assembly has clearly and unequivocally prescribed that it "favors the public policy of establishing paternity under [Article 14] of a child born out of wedlock." Ind.Code § 31–14–1–1 (1998).

---

**2.** Indiana Code section 16–37–2–2.1 was amended by P.L. 145–2006, which became effective on July 1, 2006. In the four cases at hand, the fathers signed the paternity affidavits before July 1, 2006, and the trial court's proceedings took place before this date as well. Because this amendment cannot apply retroactively to these cases, we rely upon the version of the statute before such amendments became effective. *See Martin v. State,* 774 N.E.2d 43, 44 (Ind.2002).

Given this explicit language, when we look at Article 14 of Title 31 in its entirety, we conclude that the trial court improperly determined that Indiana Code section 31–14–6–1 provides a method by which legal fathers may disestablish paternity outside of the sixty-day time limitation, absent a claim of fraud, duress or material mistake of fact. Moreover, under these statutes, a trial court does not have the authority to treat child support proceedings as proceedings to disestablish paternity.

■ The soundness of the public policy underlying our decision today is illustrated by the facts of these four cases. If genetic testing were to disestablish paternity, then each child would be considered a "filius nullius," which in Latin means a "son of nobody." *See In re Paternity of H.J.B.,* 829 N.E.2d at 160. Indiana's paternity statutes were created to avoid such an outcome, which could carry with it countless "detrimental emotional and financial effect[s]." *Id.* (quoting *Johnson Controls, Inc. v. Forrester,* 704 N.E.2d 1082, 1085 (Ind.Ct.App.1999), *trans. denied).*

The trial court relied upon our holding in *In re Paternity of N.R.R.L.,* 846 N.E.2d 1094 (Ind.Ct.App.2006), *trans. denied.* In that case, we held that a biological father was entitled to file a petition to establish paternity under the Indiana Code despite the fact that the mother and a different man had executed a paternity affidavit. That case involved a proceeding to establish the paternity of the biological father, whereas the cases at hand involve a proceeding to disestablish paternity.

■ Our case law has also emphasized that allowing a party to challenge paternity when the party has previously acknowledged himself to be the father should only be allowed in extreme and rare instances. *In re Paternity of R.C.,* 587 N.E.2d 153, 157 (Ind.Ct.App.1992); *see also Fairrow v. Fairrow,* 559 N.E.2d 597, 600 (Ind.1990)

(holding that a party who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court). Furthermore, paternity may only be challenged by evidence that has become "available independently of court action." *Fairrow,* 559 N.E.2d at 600.

The Appellees rely substantially on our unpublished memorandum decision *In re Paternity of M.H.,* No. 71A03–9905–JV–182, 717 N.E.2d 994 (Ind.Ct.App. September 20, 1999). In that case, we held that an executed paternity affidavit created a rebuttable presumption of paternity that could be contested by the father more than sixty days after he had executed the affidavit. Under Indiana Appellate Rule 65(D), an unpublished decision may not be cited as binding precedent. In addition, we are compelled to note that the statutory provisions underlying this memorandum decision were substantially amended in 2001, before the fathers in the proceedings below executed paternity affidavits.

For example, prior to 2001, Indiana Code section 31–14–7–1 stated that "a man is presumed to be a child's biological father if ... (3) the man executed a paternity affidavit in accordance with IC 16–37–2–2.1." Relying on this statute, our court held that Indiana Code section 31–14–7–1 provided that the "execution of a 'paternity affidavit' operat[ed] to create a legal presumption that the man is the child's biological father," and that such presumption could be rebutted. *In re Paternity of M.H.,* slip op. at 4. However, since then, Public Law 138–2001, sec. 6, amended this section by deleting subsection three regarding the presumption for a man who has executed a paternity affidavit.

In addition, our General Assembly contemporaneously inserted the following lan-

guage: "[a] man is a child's legal father if the man executed a paternity affidavit in accordance with IC 16–37–2–2.1 and the paternity affidavit has not been rescinded or set aside under IC 16–37–2–2.1." Ind. Code § 31–14–7–3 (2001). The General Assembly specifically chose to remove the language merely creating a "presumption" that a man who executed a paternity affidavit was the biological father of the child, and instead it inserted language providing that such a man became the "legal father" upon execution of such an affidavit unless he rescinded the affidavit within the sixty-day time frame provided for under Indiana Code section 16–37–2–2.1. In light of these amendments, our reasoning in *In re Paternity of M.H.* is no longer valid.

Furthermore, in *In re Paternity of M.H.*, we concluded that the sixty-day time limitation did not apply to a putative father who had executed a paternity affidavit. Our analysis relied upon a prior version of Indiana Code section 16–37–2–2.1(h), which provided that the sixty-day time limitation contained in subsection (h) applied only to "any person listed in Ind.Code 31–14–4–1 or Ind.Code 31–14–4–3." Therefore, we concluded that because the putative father was now contesting paternity and he was not a party listed under either Indiana Code section 31–14–4–1 or Indiana Code section 31–14–4–3, he was therefore not prohibited from challenging paternity outside of the sixty-day time frame. However, once again Public Law 138–2001, sec. 4, amended this statute to read:

> Notwithstanding any other law: any person listed in IC 31–14–4–1 or IC 31–14–4–3; or a man who is a party to a paternity affidavit executed under this section; may, within sixty (60) days of the date that a paternity affidavit is executed under this section, file an action in a court with jurisdiction over paternity to request an order for a genetic test.

(Emphasis added). Under this amendment the General Assembly specifically prescribed that the sixty-day time limitation to request a genetic test should also apply to fathers who had executed paternity affidavits. As a result of these amendments, our analysis in the memorandum decision *In re Paternity of M.H.* is no longer applicable to parties who executed paternity affidavits after such amendments became effective in 2001.

The four putative fathers at issue failed to have their paternity affidavits set aside within the sixty-day time limit as provided for under Indiana Code section 16–37–2–2.1. Therefore, under Indiana Code section 31–14–7–3, each man is deemed the legal father. We conclude that the trial court erred as a matter of law in granting the fathers' requests for genetic testing to disestablish paternity.

Reversed and remanded.

NAJAM, J., and MAY, J., concur.