In re the **PATERNITY OF M.M.**

**Bryan F., Appellant–Respondent,**

v.

**Liana M., Appellee–Petitioner.**

**No. 20A04–0802–JV–52.**

Court of Appeals of Indiana.

July 8, 2008.

Rehearing Denied Sept. 11, 2008.

second test was performed, with the same result.

On January 3, 2007, Bryan filed a petition for modification of child support. On May 1, 2007, he filed a "Motion to Set Aside Paternity Affidavit and for DNA Paternity Testing." (App.11.) Bryan alleged that the paternity affidavit was the product of fraud or material mistake of fact.

A hearing was conducted on June 21, 2007. Bryan testified "[Liana] clearly told me that I was the only one." (Tr. 4.) The trial court reasoned that there had been "acquiescence when the order of support was entered" and "case law favors establishment being supported [sic] over disestablished." (Tr. 4.) At the conclusion of the brief hearing (recorded in a seven-page transcript), Liana entered the courtroom. The trial court announced "the hearing has been held" and Liana offered no testimony either confirming or refuting Bryan's representations. Bryan was denied rescission of the paternity affidavit and court-ordered genetic testing. He now appeals.

### Discussion and Decision

■ Indiana Code Section 31–14–2–1 provides that the exclusive methods of establishing a man's paternity of a child born out-of-wedlock are (1) an action under Article 31–14 or (2) the execution of a paternity affidavit in accordance with Indiana Code Section 16–37–2–2.1. Once a man has executed a paternity affidavit in accordance with Indiana Code Section 16–37–2–2.1, he is the child's legal father unless the affidavit is rescinded pursuant to the same statute. *See* Ind.Code § 31–14–7–3.

A man who has executed a paternity affidavit may, within sixty days following the execution, file a court action to request an order for a genetic test. Ind.Code § 16–37–2–2.1(h). When more than sixty days have passed since the execution of

Andrea Kurek Slagh, Hahn, Walz and Knepp, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

### OPINION–FOR PUBLICATION

BAILEY, Judge.

#### Case Summary

Bryan F. ("Bryan") appeals the denial of his motion to rescind a paternity affidavit and request for paternity testing. We reverse and remand for court-ordered genetic testing.

#### Issue

Bryan presents a single issue for review: whether he was erroneously deprived of the opportunity for rescission of his paternity affidavit.

#### Facts and Procedural History

On May 13, 2005, Liana M. ("Liana") gave birth to M.M. out-of-wedlock. Three days later, Bryan executed a paternity affidavit provided by a nurse at Elkhart General Hospital, allegedly without a verbal explanation of the form's legal consequences. On September 22, 2006, Bryan and Liana appeared at a hearing at which Bryan was ordered to pay child support for M.M.

During October of 2006, Bryan and M.M. took part in genetic testing, purportedly with the approval of Liana. The sparse record does not reveal what prompted the testing. The results of the test excluded Bryan as M.M.'s father. A

the paternity affidavit, the affidavit may be rescinded only when a court:

> (1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and
>
> (2) at the request of a man described in subsection (h), has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.

Ind.Code § 16–37–2–2.1(i). These provisions reflect the legislature's intent to provide assistance to a man who signed a paternity affidavit due to fraud, duress, or material mistake of fact. *In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind.Ct. App.2008). As the *H.H.* Court observed,

> Frequently, the woman is the only one who could know whether more than one man might be the father of her child. Accordingly, a woman always has the information necessary to question paternity prior to signing the affidavit. A man, however, could easily sign an affidavit without awareness of the questionable nature of his paternity; this is the situation we believe the legislature intended to address.

*Id.* at 1178. The State, consistent with the trial court's apparent reasoning, argues that disestablishment of paternity is foreclosed by an overriding public policy in favor of establishing the paternity of a child born out of wedlock. *See Ind.* Code § 31–14–1–1. We agree that this is an important public policy embodied in the paternity statutory scheme. However, there is a co-existing "substantial public policy in correctly identifying parents and their offspring." *In re S.R.I.*, 602 N.E.2d 1014, 1016 (Ind.1992). Accordingly, "pub-

lic policy disfavors a support order against a man who is not the child's father." *Id.* (citing *Fairrow v. Fairrow*, 559 N.E.2d 597 (Ind.1990)).

■ The State correctly observes that the Indiana Code does not provide for the filing of a direct action to disestablish paternity, and a trial court may not disestablish paternity in the course of child support proceedings. *See In re Paternity of M.M.B.*, 877 N.E.2d 1239, 1243 n. 1 (Ind. Ct.App.2007). Nevertheless, the Indiana Legislature has provided for the rescission of paternity affidavits in rare circumstances and the granting of such relief essentially disestablishes paternity.

■ A man who executes a paternity affidavit may not fail to timely request genetic testing under Indiana Code Section 16–37–2–2.1 and then, as a matter of course, request such testing as a fishing expedition. Legal fathers may not "disestablish paternity outside of the sixty-day time limitation, absent a claim of fraud, duress or material mistake of fact." *In re Paternity of E.M.L.G.*, 863 N.E.2d 867, 870 (Ind.Ct.App.2007). A legal father may challenge paternity only "in extreme and rare instances" and the challenge must be made by "evidence that has become available independently of court action." *Id.*

Here, Bryan testified without contradiction that Liana advised him he was the only potential father of M.M. Two genetic tests showed otherwise. Thus, Bryan provided unrefuted testimony of circumstances amounting to either fraud or a material mistake of fact.[1] He was the

---

1. His contention that the Elkhart General Hospital nurse did not provide verbal advisement of legal consequences is also unrefuted. However, while Indiana Code Section 16–37–2–2.1(b)(2) requires that hospital personnel shall "verbally explain ... the legal effects of an executed paternity affidavit," there is no

corollary statutory provision allowing rescission of the paternity affidavit due to a lack of verbal explanation. *See In re Paternity of E.M.L.G.*, 863 N.E.2d at 869 (observing that a lack of awareness of legal ramifications of signing a paternity affidavit is not a valid

victim of either Liana's intentional deception or misapprehension of the critical fact of paternity. This, however, can only satisfy the first prong of Indiana Code Section 16–37–2–2.1(i). A paternity affidavit may not be rescinded unless the court, at the request of the legal father, has ordered a genetic test, and the court-ordered test indicates that the man is excluded as the father of the child. *See* Ind.Code § 16–37–2–2.1(i)(2). Bryan's request for genetic testing was summarily denied, apparently due to the trial court's perception that disestablishment of paternity contravenes public policy. As previously discussed, however, some extraordinary circumstances will permit a challenge to paternity despite the strong public policy in favor of the establishment of paternity.

We reverse and remand with instructions to the trial court to order a genetic test in accordance with Indiana Code section 16–37–2–2.1(i)(2).

FRIEDLANDER, J., and KIRSCH, J., concur.

statutory reason for setting aside paternity    affidavit).