**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KEVIN E. GREEN**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| F.G., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1210-DR-506 |
| | ) | |
| B.G., | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kimberly D. Mattingly, Magistrate
Cause No. 49D14-0811-DR-52924

**March 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

F.G. ("Father") appeals the trial court's denial of his motion to set aside decree establishing paternity and for DNA testing regarding paternity of one of his children, K.G. The sole issue presented on appeal is whether the trial court abused its equitable discretion when it denied Father's motion. Concluding that Father has failed to establish an abuse of discretion, we affirm.

## Facts and Procedural History

As we have been presented with an extremely limited record on appeal, we take the limited relevant facts and procedural history from Father's appellant's brief and the chronological case summary. B.G. ("Mother") gave birth to K.G. on September 21, 2004. Mother and Father were in a relationship but unmarried at the time. On September 22, 2004, Father executed a paternity affidavit acknowledging that he was the biological father of K.G. Mother and Father married in 2005. A second child, G.G., was born in 2006. The parties later divorced on January 29, 2010. In the divorce decree, the trial court determined that the 2004 paternity affidavit was conclusive as to the paternity of K.G. and that Father was the legal father of G.G. The trial court ordered Father to pay $77 per week in child support. Following the divorce, Father remained active in both children's lives. However, Father did not remain current with his child support obligations and, on June 18, 2012, Father received a letter from the Marion County Prosecutor's Office seeking to enforce a child support arrearage of $9525.

On August 1, 2012, Father filed a motion to set aside the decree establishing paternity and requested court-ordered DNA tests for both children. The trial court denied Father's motion on August 9, 2012, citing Indiana precedent regarding the trial court's lack of equitable discretion to set aside a paternity decree absent genetic evidence that has inadvertently become available independently of court action.[1] Thereafter, on September 7, 2012, Father filed a motion to amend and/or correct error. The trial court conducted a phone conference with Father and his counsel, following which the court denied Father's motion to amend and/or correct error. This appeal ensued.

**Discussion and Decision**

At the outset we note that Mother has not filed an appellee's brief. When the appellee fails to submit a brief, we will not undertake the burden of developing arguments for that party. *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind. Ct. App. 2002). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. *In re Paternity of B.N.C.*, 822 N.E.2d 616, 618-19 (Ind. Ct. App. 2005). Prima facie error is error at first sight, on first appearance, or on the face of it. *Id*. at 619. The appellee's failure to file a brief does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 725 (Ind. Ct. App. 2009).

---

[1] The trial court cited *Trigg v. Al-Khazali*, 881 N.E.2d 699 (Ind. Ct. App. 2008), and *In re Paternity of M.M.B.*, 877 N.E.2d 1239 (Ind. Ct. App. 2007).

Father challenges the trial court's denial of his petition to set aside the decree establishing paternity and for court-ordered DNA testing.[2] There is no dispute that Father executed a paternity affidavit the day after K.G. was born claiming to be K.G.'s biological father. In order to establish a man's paternity of a child born out of wedlock, Indiana Code Section 31-14-2-1 provides two exclusive methods: (1) a paternity action under Article 31-14 or (2) the execution of a paternity affidavit in accordance with Indiana Code Section 16-37-2-2.1. Where, as here, paternity is established by affidavit, Indiana Code Section 16-37-2-2.1(l) permits rescission of the affidavit only when certain conditions are met. Specifically, Indiana Code Section 16-37-2-2.1(l) provides:

> A paternity affidavit that is properly executed under this section may not be rescinded more than sixty (60) days after the paternity affidavit is executed unless a court:
>
> > (1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and
> >
> > (2) at the request of a man described in subsection (k), has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.

---

[2] Although Father appears to want to disestablish his paternity with respect to both children, he concentrates on his paternity as to K.G.

"These provisions reflect the legislature's intent to provide assistance to a man who signed a paternity affidavit due to fraud, duress, or material mistake of fact." *In re Paternity of T.M.*, 953 N.E.2d 96, 99 (Ind. Ct. App. 2011), *trans. denied*. However, a man who executes a paternity affidavit may not fail to timely request genetic testing under Indiana Code Section 16-37-2-2.1 and then, as a matter of course, request such testing as a fishing expedition. *Id.* A legal father may not disestablish paternity outside the sixty-day time limitation, absent a claim of fraud, duress, or material mistake of fact. *In re Paternity of E.M.L.G.*, 863 N.E.2d 867, 870 (Ind. Ct. App. 2007). Moreover, a legal father may challenge paternity only "in extreme and rare instances," and the challenge must be made by "evidence that has become available independently of court action." *Id.*

Other than Father's bald assertions of fraud, duress, or material mistake of fact, Father has presented us with virtually no record on appeal, much less evidence that this is an extreme, rare, or extraordinary instance or that evidence has become available independently of court action that would allow Father to now, after nine years, rescind his paternity affidavit pursuant to statute.[3] In *Fairrow v. Fairrow*, 559 N.E.2d 597, 600 (Ind. 1990), our supreme

---

[3] Father relies heavily on our decision in *In re Paternity of M.M.*, 889 N.E.2d 846 (Ind. Ct. App. 2008), where we reversed and remanded for the trial court to order a genetic test after two externally obtained genetic tests showed that the father, who had executed a paternity affidavit, shared no genetic link with the child. *Id.* at 849. The record in *M.M.* indicated that the externally obtained testing was done with the consent of both parents; there were two tests; their results were part of the trial court record; and the reliability of the tests was not at issue. While we need not comment on the *M.M.* court's determination that the facts presented constituted the extreme, rare, and extraordinary circumstances necessary to then allow court-ordered genetic testing for the belated rescission of a paternity affidavit pursuant to statute, we conclude that, in light of the sparse record presented, there are no facts in this case establishing any such extraordinary circumstances. While Father makes several assertions of "fact" in his appellant's brief, those facts are not supported by evidence in the record. Matters outside the record cannot be considered by the court on appeal, and we cannot speculate as to the actual facts of a case. *Zapfee v. Srbeny*, 587 N.E.2d 177, 180 (Ind. Ct. App. 1992), *trans. denied*.

court first explained such rare circumstances and how evidence may be arrived at independently of court action. The *Fairrow* court concluded that the mother's former husband was entitled to termination of the child support required under the dissolution decree because the genetic testing that established that he was not the child's biological father was conducted in the course of ordinary medical care because the child had sickle cell anemia. In granting the father relief, the *Fairrow* court stressed that the genetic testing became available "independently of court action" and that it had no intention of creating "a new tactical nuclear weapon for divorce combatants." *Id*. Accordingly, the court held that "one who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court." *Id*.

Our supreme court later clarified the scope of *Fairrow* as follows:

> We recognized in *Fairrow* that under certain extraordinary facts justice may require allowing subsequent access to the court for reexamination of paternity, and we granted relief to Mr. Fairrow. At the same time, we observed the substantial disadvantages allowing divorce litigants to use paternity as a tool in the frequently rambunctious atmosphere following the dissolution of a marriage. We advised that "one who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected.…"

> The balance we struck in *Fairrow* does not represent a perfect solution. Still … [t]he relatively bright line we established there is one that could easily evaporate to the disadvantage of thousands of parents and children should it become riddled with exceptions.

*Leiter v. Scott*, 654 N.E.2d 742, 743 (Ind. 1995) (citation omitted). This Court has since further clarified that the "externally obtained" clear medical proof as required by *Fairrow*

"means that the evidence establishing non-paternity was not actively sought by the putative father, but was discovered almost inadvertently in a manner that was unrelated to child support proceedings." *Tirey v. Tirey*, 806 N.E.2d 360, 363 n.2 (Ind. Ct. App. 2004), *trans. denied*; *see also M.M.B.*, 877 N.E.2d 1239, 1242 (Ind. Ct. App. 2007) (concluding that trial court erred in vacating judgments establishing man's paternity where man actively sought genetic evidence after children told him that he might not be their father, and thus did not inadvertently obtain medical proof through ordinary medical care concerning paternity); *Matter of Paternity of K.M.*, 651 N.E.2d 271, 274-76 (Ind. Ct. App. 1995) (holding that party may not challenge otherwise valid order establishing paternity without medical proof inadvertently obtained through ordinary medical care).

Although he acknowledges our longstanding precedent and concedes that he actively sought genetic evidence for the sole purpose of disestablishing his paternity of K.G., Father asserts that the reasoning in *Fairrow* and its progeny is now passé and that it is time for this Court to disregard the requirement that the medical proof necessary to challenge paternity be independently and inadvertently obtained. Father notes the ease with which DNA tests can now be obtained and urges us to "fully embrace DNA technology's potentially freeing power in the civil arena, in the context of interpreting Indiana paternity law." Appellant's Br. at 11.[4]

Despite Father's battle cry, we are not persuaded that our precedent is outdated. Our public policy remains the same now as it did then. Strong public policy favors establishing

---

[4] Father asserts that our recent opinion in *In re Paternity of D.L.*, 938 N.E.2d 1221 (Ind. Ct. App. 2010), *affirmed on reh'g*, 943 N.E.2d 1284 (2011), implies that the reasoning in *Fairrow* is outdated. Contrary to Father's suggestion, although we found *Fairrow* and its progeny inapplicable to the facts presented in *D.L.*, we neither concluded nor implied that the reasoning in *Fairrow* was outdated.

the paternity of children born out of wedlock, *see* Ind. Code § 31-14-1-1, and there remains great importance in the stability of legally established relationships between parents and children. *See Fairrow*, 559 N.E.2d at 600. However there is a co-existing substantial public policy in correctly identifying parents and their offspring and disfavoring a support order against a man who is not the child's father. *In re Paternity of S.R.I.*, 602 N.E.2d 1014, 1016 (Ind. 1992). Balancing these co-existing policies is what our courts continue to do by permitting a legal father to attempt to disestablish paternity only in extreme and rare circumstances. We decline Father's invitation to create or condone a rule of law which, with widespread ease, would result in children being considered "filius nullius." *See E.M.L.G.*, 863 N.E.2d at 870.[5]

Based upon the limited record before us, Father has not established that the trial court abused its equitable discretion when it denied his motion to set aside the decree establishing paternity and for DNA testing.[6] Accordingly, we affirm.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

[5] "Filius nullius" in Latin means "son of nobody." *See E.M.L.G.*, 863 N.E.2d at 870.

[6] Father makes several assertions in his brief that his motion to set aside paternity decree and DNA testing is "unopposed" by Mother. Again, Father has failed to submit a record supporting or refuting this assertion, and we will not assume facts that are not before the court.