# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Apr 17 2015, 10:04 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Gregory F. Zoeller<br>Attorney General of Indiana | Randall K. Arndt<br>South Bend, Indiana |
| Frances Barrow<br>Deputy Attorney General<br>Indianapolis, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Paternity of Ta'Tiyona Maree Carter

Bonny Gail Copeland,

*Appellant-Petitioner,*

v.

Anthony E. Carter,

*Appellee-Respondent*

April 17, 2015

Court of Appeals Case No.
71A03-1407-RS-261

Appeal from the St. Joseph Probate Court

The Honorable James N. Fox, Judge

The Honorable Aric J. Rutkowski, Magistrate

Case No. 71J01-0806-RS-35

**Crone, Judge.**

# Case Summary

[1]     Pursuant to the Uniform Interstate Family Support Act ("UIFSA"), the St. Joseph County prosecuting attorney ("the State") filed a petition to establish paternity of Ta'Tiyona Maree Carter ("Child") naming Anthony E. Carter ("Father") as Child's putative father.[1]  Although an unofficial DNA test ("the First DNA Test") indicated a 99 percent probability of Father's paternity, Father denied paternity.  The trial court then ordered a DNA test ("the Second DNA Test"), to which Father submitted and that indicated a 99.99 percent probability of Father's paternity.  Eventually, Father stipulated to the admission of the Second DNA Test results, Father admitted that he was Child's father, and the trial court issued an order ("Paternity Order") establishing Father's paternity.  Father did not appeal the Paternity Order.

[2]     Four years later, Father moved to vacate paternity finding and for genetic testing, asserting that paternity had been based on the wrong DNA test. The trial court could not find the Second DNA Test results in its file and therefore granted Father's request for another genetic test and deferred a ruling on his motion to vacate paternity finding.

---

[1] Effective July 1, 2014, Indiana Code Chapter 31-39-1, which governs the confidentiality of juvenile court records, does not apply to records involving proceedings that pertain to paternity, custody, parenting time, or child support issues concerning a child born to parents who are not married to each other.  Ind. Code § 31-39-1-1(a)(3).

[3]    The State[2] appeals the trial court's order ("Order") granting Father's motion for genetic testing. The State argues that the trial court abused its discretion in granting Father's motion for genetic testing based solely on the absence of the Second DNA Test results from the trial court's file four years after paternity was established. Our review of the record shows that Father and his attorney were very familiar with the Second DNA Test results, Father stipulated to their admission, and they were properly admitted into evidence. We conclude that the trial court abused its discretion in granting Father's motion for genetic testing and therefore reverse the Order and remand for further proceedings.

## Facts and Procedural history

[4]    Child was born July 17, 2007. In June 2008, the State filed a petition to establish paternity in cooperation with Nebraska pursuant to UIFSA.[3] In October 2008, a hearing on the petition was held, at which Father appeared without an attorney. Father and the prosecutor acknowledged that Father had already taken the First DNA Test, which established Father's paternity. The First DNA Test is not in the record before us.[4] Despite the positive results from the First DNA Test, Father denied paternity. In addition, the documents and

---

[2] The "State" is used interchangeably to refer to the St. Joseph County prosecutor and the State of Indiana.

[3] Generally speaking, UIFSA provides for cooperation between states for the determination of paternity and the establishment, enforcement, and modification of spousal and child support. Ind. Code § 31-18-3-1.

[4] It is unclear how the First DNA Test originated. At the October 14, 2008 hearing, the prosecutor stated that it was "done by [Nebraska] without a Court order." October 14, 2008 Tr. at 4. At the October 15, 2009 hearing, Father's attorney asked Father whether the first DNA test was court-ordered, and Father replied, "No. The Prosecutor called me and told me I needed to take a test." October 15, 2009 Tr. at 8.

fingerprints that were supposed to be with the test results were absent. Therefore, the trial court ordered Father, Bonny Gail Copeland ("Mother"), and Child to submit to the Second DNA Test. The trial court ordered Nebraska to make the arrangements and pay for the genetic testing subject to reimbursement by Father.

[5] On January 20, 2009, Father submitted a specimen for the Second DNA Test. In March 2009, a hearing on the Second DNA Test results was held. Father appeared and was represented by an attorney. Both the First and Second DNA Test results were discussed by the trial court and the parties. Father and his attorney acknowledged that they had seen the Second DNA Test results. Father's attorney acknowledged that both tests established Father's paternity. However, he requested a continuance for time to seek interpretation of the results because the tests were different: "One was 1 in 500,000 and one was 1 in 26,000." March 24, 2009 Tr. at 6-7. The trial court granted Father's motion for a continuance.

[6] The State later clarified that the DNA test results were different because each test compared Father's DNA with a different category of men. The First DNA Test compared Father's DNA against the North American male population and provided a combined paternity index of 26,000 to 1. The Second DNA Test compared Father's DNA against the North American black male population and provided a combined paternity index of 500,000 to 1. The combined paternity index expresses the likelihood that the subject is the father as opposed to a random man based upon the same genetic markers. *Lyons v. Stovall*, 188

F.3d 327, 330 (6th Cir. 1999), *cert. denied.* (2000). Significantly, both DNA tests showed a 99 percent probability that Father is Child's biological father, with the Second DNA Test showing a 99.99 percent probability of paternity.[5] October 22, 2009 Tr. at 6; Appellant's App. at 15.

[7] In October 2009, another hearing on the Second DNA Test was held. Father and his attorney appeared. Father's attorney had copies of the results from both DNA tests. The trial court asked to see them and observed that both tests were "inclusionary." October 15, 2009 Tr. at 4. Even though both DNA tests established Father's paternity, Father requested a blood test because the results of the DNA tests were not exactly the same. Ultimately, the trial court denied Father's request for a blood test and set a paternity hearing for January 14, 2010.

[8] In December 2009, the State filed a motion for summary judgment, arguing that it was entitled to judgment as a matter of law because (1) the Second DNA Test indicated a 99 percent probability that Father is Child's biological father and (2) the Second DNA Test results were admissible as evidence of paternity because Father had failed to object to their admissibility thirty days before the hearing at which they were to be offered as evidence.[6] The State attached a child support

---

[5] A man is presumed to be a child's biological father if he undergoes a genetic test that shows at least a 99 percent probability that he is the child's biological father. Ind. Code § 31-14-7-1(3).

[6] A party may object to the admissibility of genetic test results if the party files a written objection at least thirty days before the hearing at which the test results may be offered as evidence. Ind. Code § 31-14-6-2. If there is no objection to the genetic test results, they are admissible as evidence of paternity without the necessity of foundation testimony or other proof regarding the accuracy of the test results. *Id.*

worksheet and a copy of the Second DNA Test results. Appellant's App. at 15. This copy shows that Father submitted a specimen for DNA testing on January 20, 2009. In addition, the copy shows that the report was certified as "conducted in accordance with standard protocol" and as "true and correct" on January 22, 2009. *Id.*

[9]     In January 2010, the hearing ("Paternity Hearing") establishing Father's paternity was held. Both Father and his attorney appeared. Father stipulated to the admissibility of *both* the First and Second DNA Test results. Father also "stipulate[ed] to the paternity so long as the genetic testing reports [were] relying on the certification that the samples or specimens were not tampered with in any way." January 14, 2010 Tr. at 3. The trial court asked where the other test result was. The prosecutor informed the trial court that the State was submitting *only* the "test results based on your [o]rder here in Indiana. That's the only one I am submitting." *Id.* at 3-4. The trial court admitted the DNA test results tendered by the State. Father testified that he reviewed the Second DNA Test results with his attorney and admitted that he engaged in sexual activity with Child's mother about nine months before Child was born and was Child's father. *Id.* at 5.

[10]    The same day, the trial court issued its Paternity Order establishing Father's paternity of Child "based upon the genetic test results which are accepted into evidence in this case without objection by the Parties." Appellant's App. at 16. The Paternity Order also required Father to pay child support. Father did not pursue a direct appeal.

[11] More than three and a half years passed. In September 2013, the State filed a motion for rule to show cause alleging that Father owed $14,974.50 in child support. In November 2013, a hearing was held with a new magistrate presiding. Father was not represented by his previous attorney but by a public defender. The trial court found Father in contempt. In January 2014, a sentencing hearing was held. The State showed Father's child support arrearage at $14,749.50, which took into account a lump sum payment of $729 Father had recently made. The trial court continued the sentencing hearing to give Father time to find a job and scheduled the sentencing hearing for March 19, 2014.

[12] On February 11, 2014, a new attorney entered his appearance for Father. On March 10, 2014, over four years after the Paternity Order was issued, Father filed a motion to vacate paternity finding and for genetic testing. The motion alleged that the finding of paternity was based on a "faulty" report and that Father "recently heard from mutual friends that Mother claim[ed] the child is not his." Appellant's App. at 19.

[13] In March 2014, the State filed a motion to dismiss Father's motion to vacate paternity finding and for genetic testing, alleging that Father was attempting to relitigate paternity and was barred from doing so by res judicata and that he also failed to identify the statutory authority upon which the relief he sought could be granted.

[14] In March 2014, a hearing was held. Father's attorney told the trial court that he had reviewed the court's file and found the First DNA Test results. The trial court continued the hearing to have the clerk pull the court's file from the archives so that it could see what was actually in it.

[15] In April 2014, a hearing was held, at which the trial court examined its file. The file contained the First DNA Test results, but not the Second DNA Test results. The State contended that Father's paternity had been established based on the Second DNA Test results. The State explained that the Second DNA Test results were attached to its summary judgment motion, which was in the court's file, and that Father and his previous attorney had reviewed the Second DNA Test results and stipulated to their admissibility. The trial court stated that it had not listened to the Paternity Hearing. Father argued that the trial court had the authority to grant the relief he sought based on the provisions of Indiana Trial Rule 60(B) governing relief from judgment. The trial court took the matter under advisement and directed the parties to file memoranda in support of their respective positions.

[16] In June 2014, a hearing was held. The trial court stated, "[I]t looks like the evidence that was suppose[d] to establish the paternity wasn't actually the evidence that established the paternity." June 30, 2014 Tr. at 4. The trial court issued the Order granting Father's motion for genetic testing but deferring a ruling on his motion to set aside paternity. The Order was approved by a judge that was not involved in the original paternity proceedings. The State appeals.

## Discussion and Decision

[17] The State asserts that the trial court abused its discretion in granting Father's motion for genetic testing. The parties agree that Father's motion to vacate paternity finding and for genetic testing was in essence a motion for relief from judgment pursuant to Indiana Trial Rule 60(B).[7] "A motion for relief from judgment pursuant to Trial Rule 60(B) may not be used as a substitute for a direct appeal." *Dillard v. Dillard*, 889 N.E.2d 28, 34 (Ind. Ct. App. 2008). "'Trial Rule 60(B) motions address only the procedural, equitable grounds justifying relief from the legal finality of a final judgment, *not the legal merits of the judgment*.'" *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740 (Ind. 2010) (quoting *Mid-West Fed. Sav. Bank v. Epperson*, 579 N.E.2d 124, 129 (Ind. Ct. App. 1991)) (emphasis added). We review the grant or denial of a Trial Rule 60(B) motion for an abuse of discretion. *Id*. "An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or is contrary to law." *In re Adoption of M.P.S., Jr.*, 963 N.E.2d 625, 629 (Ind. Ct. App. 2012). "The burden is on the movant to establish ground for Trial Rule 60(B) relief." *P.S.S.*, 934 N.E.2d at 740.

---

[7] We observe that another panel of this Court held that "[t]he Indiana Code has no provision for the filing of an action to disestablish paternity." *Paternity of H.J.B.*, 829 N.E.2d 157, 159 (Ind. Ct. App. 2005). In *H.J.B.*, this Court affirmed the trial court's dismissal of a petition to disestablish paternity brought by a child whose biological mother and statutorily presumed father by marriage were deceased. *Id*. at 160-61; *see also In re Paternity of E.M.L.G.*, 863 N.E.2d 867, 870-71 (Ind. Ct. App. 2007) (concluding that because putative fathers failed to timely file actions to set aside their paternity affidavits, they were not entitled to genetic testing to disestablish paternity absent a claim of fraud, duress, or material mistake of fact). However, this Court has also upheld the trial court's vacatur of a paternity order based on a motion for relief from judgment for fraud upon the court. *In re Paternity of S.C.*, 966 N.E.2d 143, 147-52 (Ind. Ct. App. 2012).

[18] Trial Rule 60(B) permits a court to relieve a party from judgment for certain enumerated reasons. Father contends that this case involves extraordinary circumstances that justify relief under Trial Rule 60(B)(8), which encompasses "any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4)."[8] Trial Rule 60(B) provides that a motion based upon subparagraph (8) must be filed within "a reasonable time" and the movant must allege "a meritorious claim or defense."

[19] Here, the trial court's Order states in relevant part,

> Given the unique circumstances in the matter at hand, specifically that the incorrect genetic test results were submitted to the Court and relied upon by the Court at the hearing in January 2010, and the noninvasive nature of genetic testing, it is appropriate that the parties submit to genetic testing to assure that trust in the judicial process continues and to determine the biological parents of the minor child, which the Court believes to be in the child's best interest.

Appellant's App. at 34.

[20] The State contends that the absence of the Second DNA Test results from the trial court's file does not support its decision to order a new DNA test because the Paternity Hearing transcript shows that Father's paternity was based on the

---

[8] The reasons given in subparagraphs (1) through (4) are as follows: (1) mistake, surprise, or excusable neglect; (2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct error under Trial Rule 59; (3) fraud, misrepresentation, or other misconduct of an adverse party; and (4) when entry of default or judgment by default was entered against such party who was served only by publication and who was without actual knowledge of the action and judgment, order, or proceedings. Ind. Trial Rule 60(B).

Second DNA Test results.  We agree.  First, it is important to recognize that at the hearings leading up to the Paternity Hearing, Father, his original attorney, and the original magistrate all reviewed the Second DNA Test results and were aware that both DNA tests showed a 99 percent probability of Father's paternity.  Second, at the Paternity Hearing, Father's attorney stipulated to the admissibility of both the First and Second DNA Test results.  After Father's attorney mentioned the First DNA Test results, the trial court asked where they were.  The prosecutor specifically informed the trial court that the State was submitting only the results of the genetic test that the trial court in Indiana had ordered, i.e., the Second DNA Test.  January 14, 2010 Tr. at 3-4.  The trial court admitted the State's exhibit.  Thus, the record shows that the Second DNA Test results were properly admitted into evidence.  There is nothing in the record to suggest that the trial court issued the Paternity Order based on anything other than the Second DNA Test results.  We observe that the new magistrate stated that he had not listened to the Paternity Hearing.  The fact that the Second DNA Test results were not in the court's file four years after the Paternity Order was issued, standing alone, is of no moment.[9]  There are no

---

[9] Admitted exhibits are placed in the custody of the court reporter and are not maintained in the trial court's file.  Although there is no statewide regulation governing the retention of exhibits by the court reporter, the local rule in St. Joseph County provides, "Where no request for the return of exhibits or proposed exhibits is made within ninety (90) days of final judgment, the same may be disposed of by the Official Court Reporter as the Court may direct."  St. Joseph County Local Rule 212.1.4.  *See also* St. Joseph County Local Rule 71-AR15-112.2.1 ( "All models, diagrams, documents, or material admitted in evidence or pertaining to the case placed in the custody of the court reporter as exhibits shall be taken away by the parties … four (4) months after the case is decided unless an appeal is taken.").

allegations or evidence of fraud or wrongdoing. "Time and again, we have emphasized that allowing a party to challenge paternity when the party has previously acknowledged himself to be the father should only be allowed in extreme and rare circumstances." *In re Paternity T.H.*, 22 N.E.3d 804, 808-09 (Ind. Ct. App. 2014) (citing *In re Paternity of R.C.*, 587 N.E.2d 153, 157 (Ind. Ct. App. 1992)). Such extreme and rare circumstances are not present here. Accordingly, we conclude that there are no circumstances that warrant relief under Trial Rule 60(B)(8), and thus the trial court abused its discretion in ordering a new DNA test.[10] Therefore, we reverse the Order granting Father's motion for new genetic testing and remand for further proceedings.

Reversed and remanded

Brown, J., and Pyle, J., concur.

---

[10] Father also argues that the extraordinary circumstances justifying relief from judgment include his allegation that he heard from mutual friends that Mother claimed that he is not the biological father. We are unpersuaded that a mere rumor constitutes extraordinary circumstances justifying relief from judgment.