

FILED

Feb 12 2018, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Denise F. Hayden
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Paternity of B.M. and O.M., | February 12, 2018 |
| B.S.M., | Court of Appeals Case No. 49A02-1706-JP-1383 |
| *Appellant-Respondent,* | Appeal from the Marion Circuit Court |
| v. | The Honorable Sheryl Lynch, Judge The Honorable Jason G. Reyome, Magistrate |
| E.S.F., | |
| *Appellee-Petitioner,* | |
| and | Trial Court Cause Nos. 49C01-1303-JP-8858 49C01-1303-JP-8859 |
| State of Indiana, | |
| *Appellee-Intervenor.* | |

**Kirsch, Judge.**

[1] B.S.M. ("Father") appeals the trial court's order denying his motion to set aside judgment of paternity as to B.M. and O.M. pursuant to Indiana Trial Rule 60(B), contending that the trial court erred when it denied his motion.

[2] We affirm.

## Facts and Procedural History

[3] E.S.F. ("Mother") was pregnant with B.M. at the time she met Father. B.M. was born on December 1, 2005, and Father knew he was not B.M.'s biological father when he signed the paternity affidavit for B.M. on August 19, 2009. O.M. was born on April 7, 2009, and Father executed a paternity affidavit on the same day. When he signed the paternity affidavit, Father suspected that he might not be O.M.'s father. *Tr. Vol. 2* at 54. Some months after O.M.'s birth, Mother told Father during an argument that he might not be O.M.'s biological father. Father never denied he was O.M.'s father until Mother tried to get child support. *Id*. at 15-16.

[4] On March 7, 2013, Mother filed petitions to establish support of B.M. and O.M. based on the execution of paternity affidavits. On April 29, 2013, following a hearing at which Father appeared and Mother did not, the trial court entered default judgments of paternity and support, in which Father stipulated that he had executed paternity affidavits, pursuant to Indiana Code section 16-37-2-2.1, as to each child. At that time, as a temporary order, support was set at $0 and reserved for final hearing until such time that one of the parties requested a hearing on support. On August 31, 2015, Mother, with

the aid of the Marion County Prosecutor's Office, filed a petition to determine reserved issues from the paternity judgment, including such issues as current and retroactive child support.

[5]     On February 23, 2016, Father filed a Trial Rule 60(B) motion to set aside the judgment of paternity as to O.M. and a motion to request DNA testing to establish paternity of O.M. *Appellant's App. Vol. 2* at 37, 39. The trial court conducted a hearing on Father's motion with respect to O.M. on July 11, 2016. On August 25, 2016, Father filed a Trial Rule 60(B) motion to set aside the judgment of paternity as to B.M. and a motion to request DNA testing to establish paternity of B.M. *Id*. at 4-5. On September 22, 2016, the trial court entered an order for genetic testing for both B.M. and O.M. After multiple continuances, the trial court conducted hearings on Father's motions on May 9, 2016, July 11, 2016, November 17, 2016, December 5, 2016, and May 15, 2017. At these hearings, testimony was given that Father is the only father the children have ever known. *Tr. Vol. 2* at 45. Further testimony was heard that, until about a year before the hearing, B.M. and O.M. had stayed with Father every other weekend and he had paid an agreed-upon amount of child support, had gotten the boys for the holidays, had taken them to see his family, had attended parent-teacher conferences, and had helped buy school supplies. *Id*. at 46. The results of the DNA testing excluded Father as the biological father of both boys. *State's Exs*. A, B. However, the results of the court-ordered DNA tests were later ordered stricken from the record because the tests were ordered in error. *Appellant's App. Vol. 2* at 20.

[6] On June 7, 2017, the trial court entered a final order on Father's Trial Rule 60(B) motions to set aside judgment of paternity, denying both motions. In its order, the trial court found that both of the children knew Father as their father. *Id*. The trial court also found that Father did not seek genetic testing independent of court action and that he voluntarily signed paternity affidavits for both B.M. and O.M. *Id*. The trial court further found that, on April 29, 2013, Father sought default judgments for both children with knowledge that B.M. was not logically his biological child and with knowledge that O.M. was possibly not his biological child and then waited almost three years after the paternity default judgments were entered to challenge paternity for his eleven and eight-year-old sons. *Id*. Accordingly, the trial court ordered that the default judgments establishing paternity should remain standing as valid orders of the court. *Id*. at 21. Father now appeals.

## Discussion and Decision[1]

[7] The decision of whether to grant or deny a Trial Rule 60(B) motion for relief from judgment is within the sound, equitable discretion of the trial court. *Prince v. Marion Cnty. Auditor*, 992 N.E.2d 214, 217 (Ind. Ct. App. 2013), *trans. denied*.

---

[1] We note that the State argues Father's appeal should be dismissed because this court lacks subject matter jurisdiction as the trial court's order was not a final judgment disposing of all claims between the parties. *Appellee's Br*. at 10. Although the trial court's order did state that "the matter will be reset for hearing on reserved issues," *Appellant's App. Vol. 2* at 21, under Indiana Appellate Rule 2(H), there are five ways in which a judgment is a final judgment, one of which is when a judgment is deemed final under Trial Rule 60(C). Trial Rule 60(C) stated in pertinent part that "[a] ruling or order of the court denying or granting relief, in whole or in part, by motion under subdivision (B) of this rule shall be deemed a final judgment, and an appeal may be taken therefrom as in the case of a judgment." Here, Father is appealing from a trial court order denying him relief under Trial Rule 60(B), and this court has jurisdiction over this appeal.

We will not reverse a denial of a motion for relief from judgment in the absence of an abuse of discretion. *Id.* Moreover, where as here, the trial court enters special findings and conclusions pursuant to Indiana Trial Rule 52(A), our standard of review is two-tiered. *Barton v. Barton*, 47 N.E.3d 368, 373 (Ind. Ct. App. 2015), *trans. denied.* First, we determine whether the evidence supports the findings, and second whether the findings support the judgment. *Id.* The trial court's findings and conclusions will be set aside only if they are clearly erroneous. *Id.* In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* Rather we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. *Id.*

[8] Father argues that the trial court erred in denying his motion to set aside the judgments of paternity as to B.M. and O.M. Specifically, he contends that, under Indiana Code section 16-37-2-2.1, the paternity affidavits should be rescinded because the affidavits were executed under fraud, duress, or material mistake of fact, and there was a court-ordered genetic test that proved he was not the biological father of B.M. and O.M. Father asserts that the DNA test results proved that he was not the biological father of either B.M. or O.M. and that, by denying his Trial Rule 60(B) motion, the trial court condoned the fraud that was perpetrated by Mother. We reject Father's claim.

[9] Father is the legal father of B.M. and O.M. based on the paternity affidavits he executed. *See* Ind. Code § 31-14-7-3; *In re Paternity of M.M.*, 889 N.E.2d 846, 847 (Ind. Ct. App. 2008) ("Once a man has executed a paternity affidavit in

accordance with Indiana Code section 16-37-2-2.1, he is the child's legal father unless the affidavit is rescinded pursuant to the same statute."). Indiana Code section 16-37-2-2.1(k) gives a man sixty days after executing a paternity affidavit to file a court action to request genetic testing. After 60 days the paternity affidavit may only be rescinded when a court: "(1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and (2) at the request of a man described in subsection (k), has ordered a genetic test, and the test indicates that the man is excluded as the father of the child." I.C. § 16-37-2-2.1(l)(1).

[10] "These provisions reflect the legislature's intent to provide assistance to a man who signed a paternity affidavit due to fraud, duress, or material mistake of fact." *In re Paternity of T.M.*, 953 N.E.2d 96, 98 (Ind. Ct. App. 2011), *trans. denied.* However, a man who executed a paternity affidavit may not fail to timely request genetic testing under Indiana Code section 16-37-2-2.1 and then, as a matter of course, request such testing as a fishing expedition. *Id.* A legal father may not disestablish paternity outside the sixty-day time limitation, absent a claim of fraud, duress, or material mistake of fact. *In re Paternity of E.M.L.G.*, 863 N.E.2d 867, 870 (Ind. Ct. App. 2007). Moreover, a legal father may challenge paternity only "in extreme and rare instances," and the challenge must be made by "evidence that has become available independently of court action." *Id.*

[11] Here, Father executed the paternity affidavits years before moving to have the judgment of paternity set aside, and he has failed to show fraud, duress, or

material mistake of fact in the execution of the paternity affidavits. Father knew he was not the biological father of B.M. when he executed the paternity affidavit for B.M. more than three years after B.M.'s birth. Father was told he might not be O.M.'s biological father within a few months of O.M.'s birth, and he testified that he was aware of the possibility that he might not be O.M.'s biological father at the time O.M. was born, which was the same date Father signed the paternity affidavit. *Tr. Vol. 2* at 54. Thus, Father signed the paternity affidavits with the knowledge that he definitely was not the biological father of B.M. and the knowledge that he might not be the biological father of O.M. Further, he appeared in court on Mother's petitions to establish support pursuant to the execution of paternity affidavits on April 29, 2013, and he did not contest his paternity. Instead, Father waited until Mother sought child support, years after he executed the paternity affidavits, to challenge his paternity. We, therefore, conclude that Father has not proven that fraud, duress, or material mistake of fact existed at the time he executed the paternity affidavits. *See In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008) (holding that paternity affidavits executed by a man and woman who both knew that the man was not the biological father of the child cannot be set aside under the statute).

[12] Father further argues that the paternity affidavits should be rescinded because, pursuant to the second prong of Indiana Code section 16-37-2-2.1(l)(1), the trial court ordered a genetic test, at his request, and the test indicated that Father was excluded as the father of B.M. and O.M. A legal father may challenge

paternity only "in extreme and rare instances," and the challenge must be made by "evidence that has become available independently of court action." *In re Paternity of E.M.L.G.*, 863 N.E.2d at 870. In *Fairow v. Fairow*, 559 N.E.2d 597 (Ind. 1990), our Supreme Court explained such rare circumstances and how evidence may be arrived at independently of court action, where it held that "one who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court." *Id.* at 600. It has been further clarified that the "externally obtained" clear medical proof as required by *Fairow* "means that the evidence establishing non-paternity was not actively sought by the putative father, but was discovered almost inadvertently in a manner that was unrelated to child support proceedings." *Tirey v. Tirey*, 806 N.E.2d 360, 362 n.2 (Ind. Ct. App. 2004), *trans. denied*; *see also In re Paternity of M.M.B.*, 877 N.E.2d 1239, 1245 (Ind. Ct. App. 2007) (concluding that trial court erred in vacating judgments establishing man's paternity where he actively sought genetic evidence after children told him that he might not be their father, and therefore did not inadvertently obtain medical proof through ordinary medical care unrelated to paternity); *In re Paternity of K.M.*, 651 N.E.2d 271, 276 (Ind. Ct. App. 1995) (holding that party may not challenge otherwise valid order establishing paternity without medical proof inadvertently obtained through ordinary medical care).

[13] Here, Father sought genetic testing solely to contest his paternity of B.M. and O.M. Therefore, there was no evidence of non-paternity that had been

inadvertently obtained through ordinary medical care unrelated to paternity. The trial court properly denied Father's motion to set aside the judgment of paternity as to both B.M. and O.M..

[14] Affirmed.

[15] Bailey, J., and Pyle, J., concur.