

FILED

Sep 11 2019, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

J. Christopher Janak
Paul D. Vink
Bradley M. Dick
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR *AMICI CURIAE* THE
NATIONAL ASSOCIATION OF HOME
BUILDERS AND INDIANA BUILDERS
ASSOCIATION

Jason A. Lopp
McNeely Stephenson
New Albany, Indiana

ATTORNEYS FOR APPELLEE

L. Rachel Lerman
Barnes & Thornburg LLP
Los Angeles, California

Nicholas K. Kile
Barnes & Thornburg LLP
Indianapolis, Indiana

Kristi L. Fox
Fox Law Offices, LLC
New Albany, Indiana

ATTORNEYS FOR *AMICI CURIAE*
ACCELERATE INDIANA
MUNICIPALITIES AND INDIANA
MUNICIPAL LAWYERS, INC.

Douglas D. Church
Alexander P. Pinegar
Church Church Hittle & Antrim
Noblesville, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Knob Hill Development LLC; ASB LLC; RPO Construction, Inc.; Written Builders LLC; <br><br> *Appellants-Petitioners,* <br><br> v. | September 11, 2019 <br><br> Court of Appeals Case No. 18A-MI-2123 <br><br> Appeal from the Floyd Superior Court <br><br> The Hon. Susan L. Orth, Judge |

| Town of Georgetown, Indiana, *Appellee-Respondent.* | Trial Court Cause No. 22D01-1803-MI-307 |

**Bradford, Judge.**

# Case Summary[1]

[1] Knob Hill Development LLC; ASB LLC; RPO Construction, Inc.; and Written Builders LLC ("Builders") are all real-estate developers who appeal from the trial court's refusal to invalidate a 2018 ordinance passed by the Town of Georgetown ("the Town") setting charges for new customers of the Georgetown Municipal Sewage Works ("the System"). Builders contend that the system development charge ("SDC"), a/k/a connection fee, in the ordinance is arbitrary, capricious, and contrary to law. Builders also contend that a provision of the ordinance that automatically increases the SDC 2% each year is contrary to law. Because we disagree with Builders' first contention but agree with the second, we affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

---

[1] We heard oral argument in this case on August 21, 2019, in the Court of Appeals courtroom in Indianapolis. We would like to commend all counsel on the high quality of their written and oral advocacy.

[2] Builders each own property that is or will be connected to the System, which was constructed in the early 1990's and had its flow treated by the City of New Albany at the time. In 1994, the Town received approximately $3.8 million in grants ("the 1994 Grant") and, in 1998, the federal government forgave approximately $1.25 million in loans to the Town ("the 1998 Loan Forgiveness"). In 2004, the Town adopted an ordinance to finance expansions to the System, which began charging SDCs per equivalent dwelling unit ("EDU") upon connection. The SDCs were initially set at $2300 and $4800 per EDU for new in-town and out-of-town connections, respectively, to increase $100 per year after 2004.

[3] In or around 2011, the Town determined that it should build its own treatment plant, which it did, with the plant having an initial capacity of 350,000 gallons per day. The Town received a $3.5 million grant pursuant to the American Recovery and Investment Act ("the ARRA Grant") to fund construction of the treatment plant. In the years since, the Town has almost outgrown the plant's original capacity and is in the process of expanding it to treat 700,000 gallons per day. The Town has devoted $3.1 million borrowed from the Indiana State Revolving Fund and over $900,000 in Town funds to the expansion. On February 20, 2018, the Town adopted Ordinance Nos. G-18-03 and G-18-04, which established monthly sewer user fees and new SDCs, respectively. Ordinance No. G-18-04 imposed a new SDC of $7140 per EDU for both in-town and out-of-town customers with the SDC to increase 2% each year.

[4]     On March 1, 2018, Builders filed a petition objecting to the rates and charges set in Ordinance Nos. G-18-03 and G-18-04. On June 19, 2018, the trial court conducted an evidentiary hearing. Doug Baldessari had advised the Town regarding the SDCs in Ordinance No. G-18-04 and testified at the hearing. Baldessari relied on the Water Environment Federation manual, "Financing and Charges for Wastewater Systems," ("the WEF Manual") which included the following guidance for setting SDCs:

> Increasingly, in response to the stated goal to charge new customers for the full cost of growth, and thereby avoid the subsidization of new customers by existing customers, many state laws allow utilities to implement a combined fee approach. This approach is rapidly gaining favor in many jurisdictions. It generally applies when the current system facilities could serve future customers and a portion of the wastewater capital improvement program is also related to growth. The combined fee approach includes two separate elements
>
> (1) System reimbursement component. Includes a portion for new customer to pay for an equitable share of existing facilities.
>
> (2) Incremental new capacity component (also referred to as growth-related improvement component). Includes future facilities that will be constructed to accommodate growth.

Plaintiff's Ex. 3 p. 192.

[5]     With this guidance in mind, Baldessari testified that he had used a combined method in which the new SDC would be determined by adding (1) the value of the utility divided by the number of existing EDUs to (2) the net cost per EDU to finance new development. Baldessari's calculations, dated February 8, 2018, are shown below:

## GEORGETOWN (INDIANA) MUNICIPAL SEWAGE WORKS
## CALCULATION OF EQUIVALENT DWELLING UNITS AND NET EQUITY PER EDU

Equivalent Dwelling Unit - Current:

| | | |
|---|---:|---:|
| Annual Operating revenues (12 months ended 10/31/17 unaudited) | | |
| Collection and treatment | $1,064,200 | |
| Divided by 12 months | 12 | |
| Monthly revenues | 88,683 | |
| Divided by average residential bill (4,000 gallons per month) | 58.30 | |
| Equivalent Dwelling Units - Current | | 1,521 |

Existing System Equity

| | |
|---|---:|
| Total estimated existing system equity at 12/31/17 | $8,607,778 |
| Divided by existing number of Equivalent Dwelling Units (EDUs) | 1,521 |
| Equity per existing EDU | $5,659 |

[….]

## GEORGETOWN (INDIANA) MUNICIPAL SEWAGE WORKS
## CALCULATION OF ESTIMATED COSTS PER EDU TO SERVE NEW DEVELOPMENT
### (Per Consulting Engineers)

Capacity and Growth Projects

| Projects Necessary to Increase Capacity: | |
|---|---:|
| Future WWTP Expansion (add 350,000 gpd) | $3,000,000 |
| Future Upgrades to East Lift Station | 200,000 |
| Future Upgrades to West Lift Station | 200,000 |
| Future Upgrades to Misc. Small Lift Stations | 200,000 |

|  |  |
|---|---|
| Net cost of projects to serve new development | 3,600,000 |
| Divided by estimated number of proposed EDUs (1) | 1,145 |
|  |  |
| Net Cost Per EDU to Serve New Development | $3,144 |

[....]

GEORGETOWN (INDIANA) MUNICIPAL SEWAGE
WORKS
SUMMARY OF CALCULATED CAPACITY FEES

|  |  |
|---|---|
| Equity per existing user | $5,659 |
| Net cost per EDU to serve new development | 3,144 |
| Calculated System Development Charge | $8,803 |
| Rounded (Use) | $8,800 |
| Current Fee - Inside Town 2018 | $5,100 |
| Current Fee - Outside Town 2018 | $7,140 |
| Proposed Fees - Inside and Outside Town | $7,140 |

Plaintiff's Ex. 5 pp. 2–4.

[6] When calculating the total value of the utility, Baldessari testified that grants given to a utility for the purposes of keeping rates down at the time, such as the 1994 Grant, the 1998 Loan Forgiveness, and the ARRA Grant (collectively, "the Grants"), did not have to be left out. Baldessari testified that the SDC set by Ordinance G-18-04 "doesn't make the inside-of-town customers pay for growth that they don't share in[,]" Tr. Vol. II p. 91, and that leaving items such as the ARRA Grant out of the calculations would likely leave the Town short of the SDCs needed for growth-related improvements in the future. While Baldessari's calculations indicated that the new SDC should be $8800, he ultimately recommended a new SDC of $7140 for all new users.

On August 13, 2018, the trial court (1) upheld Builders' objection to Ordinance No. G-18-03 because it failed to specify the percentage rate differential between in-town and out-of-town users as required by Indiana Code section 8-1.5-3-8.1 and (2) overruled Builders' objection to Ordinance No. G-18-04 on the basis that the Town had a rational basis for setting the SDCs as they did. The Builders appeal, claiming that Ordinance No. G-18-04 is arbitrary, capricious, and contrary to law in setting the base SDC and violates due process because it provides for an automatic 2% yearly increase in the SDC.

# Discussion and Decision

Builders requested that the trial court enter findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). (Appellants' App. Vol. II p.41.). In such cases, our standard of review is two-tiered. *In re Paternity of B.M.*, 93 N.E.3d 1132, 1135 (Ind. Ct. App. 2018). "First, we determine whether the evidence supports the findings, and second whether the findings support the judgment." *Id.* "The trial court's findings and conclusions will be set aside only if they are clearly erroneous." *Id.* "In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of the witnesses." *Id.* "Rather we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them." *Id.* "Conclusions of law are reviewed *de novo*." *11438 Highway 50, LLC v. Luttrell*, 81 N.E.3d 261, 265 (Ind. Ct. App. 2017), *trans. denied*.

As the Indiana Supreme Court recognized some time ago,

rate-making is a legislative, not a judicial function, and even if a statute attempted to lodge such power in a court it would be unconstitutional. Although we have a constitutional system of government in which the judiciary is said to be supreme in determining the jurisdiction and limits on the powers of the other branches of the government, as fixed by the constitution and laws, yet this supremacy does not extend to the point where we may substitute our judgment for, or control the discretionary action of the executive or legislative branches, so long as their action is within the sphere and jurisdiction fixed by the statutes and constitution.

*Pub. Serv. Comm'n v. City of Indpls.*, 131 N.E.2d 308, 312 (Ind. 1956).

[10] It is well-settled that we will invalidate a rate-making ordinance only if it is arbitrary, capricious, or contrary to law. *Bd. of Dirs. of Bass Lake Conservancy Dist. v. Brewer*, 839 N.E.2d 699, 701 (Ind. 2005). We will find a municipal entity's legislative action arbitrary or capricious only if it is "patently unreasonable." *S. Gibson Sch. Bd. v. Sollman*, 768 N.E.2d 437, 441 (Ind. 2002). "Judicial review of whether a governmental agency has abused its rulemaking authority is highly deferential[,]" *Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg*, 694 N.E.2d 222, 234 (Ind. 1997), and we "will not intervene in a local legislative process[if it is] supported by some rational basis." *Borsuk v. Town of St. John*, 820 N.E.2d 118, 122 (Ind. 2005). "A court is not permitted to substitute its own judgment for the municipality's discretionary authority; it may only determine whether the municipality is acting within its statutory authority." *Bass Lake Conservancy Dist.*, 839 N.E.2d at 701 (citation omitted).

[11] "A municipality may […] acquire, construct, improve, operate, and maintain sewage works under this chapter[.]" Ind. Code § 36-9-23-2. As for setting rates, Indiana Code subsection 36-9-23-25 provides, in part, as follows:

> [T]he municipal legislative body shall, by ordinance, establish just and equitable fees for the services rendered by the sewage works, and provide the dates on which the fees are due.
>
> [….]
>
> (d) The municipal legislative body may use one (1) or more of the following factors to establish the fees:
>
> (1) A flat charge for each sewer connection.
>
> (2) The amount of water used on the property.
>
> (3) The number and size of water outlets on the property.
>
> (4) The amount, strength, or character of sewage discharged into the sewers.
>
> (5) The size of sewer connections.
>
> (6) Whether the property has been or will be required to pay separately for any part of the sewage works.
>
> (7) Whether the property, although vacant or unimproved, is benefited by a local or lateral sewer because of the availability of that sewer. However, the owner must have been notified, by recorded covenants and restrictions or deed restrictions in the chain of title of the owner's property, that a fee or assessment for sewer availability may be charged, and the fee may reflect only the capital cost of the sewer and not the cost of operation and maintenance of the sewage works.
>
> (8) The cost of collecting, treating, and disposing of garbage in a sanitary manner, including equipment and wages.
>
> (9) The amount of money sufficient to compensate the municipality for the property taxes that would be paid on

the sewage works if the sewage works were privately owned.

(10) Any other factors the legislative body considers necessary.

Ind. Code § 36-9-23-25.

[12] Of note, it is undisputed that the System is not subject to the jurisdiction of the Indiana Utility Regulatory Commission ("IURC"). "Nothing in the case law or in the applicable statutes mandates a certain type of rate-making method for municipal utilities that have removed themselves from the jurisdiction of the IURC." *In re City of Clinton Water Works Rate Schedule Adopted Sept. 9, 1997*, 707 N.E.2d 807, 810 (Ind. Ct. App. 1999), *trans. denied*. "Indeed, when a municipal utility removes itself from that jurisdiction, […] the IURC's authority is replaced by local control." *Id*. (citing *Stucker Fork Conservancy Dist. v. IURC*, 600 N.E.2d 955, 959 n.9 (Ind. Ct. App. 1992)). Utilities that are not subject to IURC jurisdiction are not limited to methodologies generally accepted by the IURC when setting rates. *See id*. ("Thus, we conclude that the City in support of its rate increase was not limited to methodologies generally accepted by the IURC.").

[13] Builders contend that (1) the 2018 SDC is arbitrary and capricious because it took into account the Grants and previously-paid SDCs, (2) the methodology for calculating the 2018 SDC violates relevant Indiana case law, and (3) the 2018 SDC impermissibly provides for an automatic yearly increase without a hearing on each increase.

# I.  Whether the 2018 SDCs Included Improper Costs Passed on to New Users

Builders contend that including the Grants and previously-paid SDCs in the total value of the utility when calculating the 2018 SDCs was arbitrary, capricious, and contrary to law.  The Town argues that it was appropriate to include those items when calculating the total value of the utility.

## A.  The Grants

Builders argue that inclusion of the Grants in the calculations of the 2018 SDCs was arbitrary and capricious.  Specifically, Builders argue that including the Grants in the calculations (1) is essentially a double recovery for the Town and (2) conflicts with Indiana law because the grants are not "costs" that can passed on to users of new connections.

As for Builders' double-recovery argument, inclusion of the Grants is a method of determining the value of the utility for purposes of calculating the equity portion of the combined method for setting the SDC, a method which Baldessari testified was appropriate.  While it is true that a higher total value for the System results in a higher SDC using the combined method, Baldessari testified that this was not double payment.  Baldessari testified that requiring new customers to pay for all of the new plant, as well as putting them on an equal equity footing with existing customers, constitutes "paying their fair share" and is consistent with the WEF Manual.  Tr. Vol. II p. 80.  The trial court was entitled to credit this expert testimony and did, a decision we will not second-guess.  *See, e.g.*, *Hopkins v. State*, 579 N.E.2d 1297, 1303–04 (Ind. 1991)

("Any battle of qualified experts, as in the instant case, or other conflict as to the reliability of evidence is to be resolved by the trier of fact, whose finding in this regard will be upheld on review as long as the favorable evidence adequately supports it, as with any sufficiency question.") (citations omitted).

[17] As for Builders' argument that Indiana law stands for the proposition that the Grants are not costs that can be passed on to the new customers, they cite to Indiana Code subsection 36-9-23-25(e), which provides that

> [t]he municipal legislative body may exercise reasonable discretion in adopting different schedules of fees, or making classifications in schedules of fees, based on variations in:
>
>> (1) the costs, including capital expenditures, of furnishing services to various classes of users or to various locations; or
>>
>> (2) the number of users in various locations.

[18] Builders argue that the Town is impermissibly making new customers pay the Town for the Grants while exempting existing customers, claiming that this is not a valid variation in the cost of furnishing service that can justify the 2018 SDC. This argument is little more than a variation on the double-payment argument, and, as mentioned, Baldessari opined that including the grants in the connection-fee calculation was not considered double payment. We conclude that including the Grants when calculating the 2018 SDC did not violate Indiana Code section 36-9-23-25(e).

## B. The Previously-Paid SDCs

[19] Builders argue that the approximately $1.26 million in previously-paid SDCs were contributions in aid of construction ("CIAC") and should not have been

used to calculate the 2018 SDC. The Town, however, argues that the previously-paid SDCs were properly considered revenue, not CIAC, and were therefore rightfully included in the calculations. The Town also argues that any requirement that SDCs must be treated as CIAC only applies in cases governed by the IURC, which all agree has no jurisdiction in this case.

[20] "CIAC has been described as 'donations provided at no cost to the utility.' CIAC may come from state or local governments, customers, or developers as incentives to upgrade utilities to accommodate larger customers without burdening existing customers." *Ind. Office of Util. Consumer Counselor v. Lincoln Utils., Inc.*, 834 N.E.2d 137, 143 (Ind. Ct. App. 2005) (citation omitted), *trans. denied*. In support of their argument that previously-paid SDCs must be treated as CIAC, Builders cite to Indiana Code subsection 8-1-2-6(b), which provides that, in general, "no account shall be taken of construction costs unless such costs were actually incurred and paid as part of the cost entering into the construction of the utility" when valuing a utility. Builders also cite to several cases in which it was held that previously-paid SDCs were CIAC and could not be used in calculating future SDCs. Section 8-1-2-6, however, only applies to utilities under the jurisdiction of the IURC, and all of the cases arose in contexts governed by the IURC. As mentioned, it is undisputed that the System is not subject to the jurisdiction of the IURC. Consequently, the law relied upon by Builders does not stand for the proposition that the Town must abide by the same restriction.

[21] That said, Builders also argue that Baldessari's testimony that previously-paid SDCs are not CIAC was unsupported by any authority. Baldessari, however, testified that previously-paid SDCs were not considered CIAC for municipally-owned utilities like the System and that "the WEF [Manual] even states that that's generally considered that they're user charges." Tr. Vol. II p. 50. Baldessari's reliance on the WEF Manual to support his conclusion on this point was not challenged at the hearing. Again, Builders are requesting that we reweigh the evidence on this point, which we will not do. *See Hopkins*, 579 N.E.2d at 1303–04.

## C. Whether Imposing an SDC that Places the Burden of Improvements on New Users is Contrary to Indiana Law

[22] Builders also argue that imposing an SDC that does not spread the burden of improvements to current System users is contrary to Indiana law. Builders rely on one non-IURC case to support this argument, *Common Council of City of Crown Point, Lake Cty. v. High Meadows, Inc.*, 173 Ind. App. 138, 362 N.E.2d 1166 (Ind. Ct. App. 1977). In *High Meadows*, landowners challenged the city's ordinance which sought to increase fees charged to connect to the city's sewer system. *Id*. at 138, 362 N.E.2d 1167. The trial court sustained the challenge. *Id*. On appeal, we noted that while municipal sewage connection charges were not necessarily limited to recoupment of the cost of the inspection and the actual work performed, the charges levied under the ordinance in question exceeded the city's statutory authority. *Id*. at 139, 362 N.E.2d 1166, 1167. Specifically, we concluded that although the city could have established a connection rate or charge that included amounts to be used for future

improvements to the system, such charges could not have been levied only upon new users when there was an established group of users of the same system who would not have been subject to the charges. *Id*. at 143, 362 N.E.2d 1166, 1169.

[23] As the Town points out, however, *High Meadows* was based on statutes which have been superseded by subsequent legislation, including the Home Rule Act, as recognized by more recent judicial analysis. In the 1998 case of *Taylor v. Fall Creek Regional Waste District*, 700 N.E.2d 1179 (Ind. Ct. App. 1998), *trans. denied*, we recognized that the statute at issue in *High Meadows*, former Indiana Code section 19-2-5-20, afforded less discretion to sewage utilities than the one at issue in *Fall Creek*, Indiana Code section 13-26-11-2(a), which applies to regional sewage utilities, was enacted in 1996, and allows the utility to determine rates based on a number of factors, including "(7) A combination of these or other factors that the board determines is necessary to establish nondiscriminatory, just, and equitable rates or charges."

[24] A few years after *High Meadows* was decided, the General Assembly replaced Indiana Code sections 19-2-5-19 through -21 with Indiana Code section 36-9-23-25, the statute at issue in this case. As was the case with the statute at issue in *Fall Creek*, section 36-9-23-25 provides a municipality with more discretion than section 19-2-5-20 afforded. Indeed, subsection 36-9-23-25(d) allows even more discretion to municipalities than subsection 13-26-11-2(a) does to regional authorities, as the municipal legislative body may use one or more of several

listed factors, including "[a]ny other factors the legislative body considers necessary."

[25] Moreover, *High Meadows* predates the Indiana Home Rule Act, enacted in 1980. *High Meadows* was decided pursuant to the so-called "Dillon Rule," which presumed that local governments possess only those powers expressly authorized by statute.

> Like many other states, Indiana historically adhered to the Dillon Rule that a municipal corporation could exercise only the following powers:
>
>> First, those granted in *express words*; second, those *necessarily or fairly implied in*, or *incident to*, the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation—not simply convenient, but indispensable.
>
> *Tippecanoe Cnty. v. Ind. Mfr.'s Ass'n*, 784 N.E.2d 463, 465 (Ind. 2003) (citing Dillon, *Municipal Corporations* (1st ed. 1872) (emphasis in original)). A corollary rule of construction required that a court resolve any reasonable doubt concerning the existence of a power against the corporation and enjoin the corporation from exercising it. *See id.*
>
> Under the Dillon Rule, a person who simply found himself on the wrong side of some local action could easily challenge that action by essentially arguing that it was *ultra vires*. *See, e.g.*, *City of S. Bend v. Chicago, S.B. & N.I. Ry. Co.*, 179 Ind. 455, 458, 101 N.E. 628, 629 (Ind. 1913) ("[T]he charter of South Bend delegated no power for the enforcement of the ordinance in controversy…."). The resulting legal landscape handcuffed municipal corporations, preventing them from taking a wide range of governmental actions we might find commonplace today. *See, e.g.*, *Pittsburgh, C., C. & St. L. Ry. Co. v. Town of Crown Point*, 146 Ind. 421, 45 N.E. 587 (1896) (town could not enforce ordinance requiring railroad to post

watchmen and maintain gates at crossings at railroad's expense because statute authorizing ordinances to prevent nuisances did not provide so specifically).

> Recognizing the disadvantages of the Dillon Rule, the Legislature abrogated it in 1971, when it passed the Indiana Powers of Cities Act. Act of April 14, 1971, P.L. 250–1971, § 1, 1971 Ind. Acts 955, 967. The Legislature expanded the applicability of this reforming principle in 1980, when it passed the Indiana Home Rule Act. Act of February 27, 1980, P.L. 211–1980, § 1, 1980 Ind. Acts 1657, 1659–62 (codified as amended at Ind. Code §§ 36-1-3-1 to -9 (2007)). In addition to reaffirming the abrogation of the Dillon Rule, the Home Rule Act provides that in general, a unit is presumed to possess broad powers of local government, unless the Indiana Constitution or a statute expressly denies the unit that power, or expressly grants it to another entity. Ind. Code § 36-1-3-5 (2007)[.]

*Kole v. Faultless*, 963 N.E.2d 493, 495–96 (Ind. 2012). Since 1980, then, the presumption has been that any doubt as to the existence of a power "shall be resolved in favor of its existence." Ind. Code § 36-1-3-3(b).

[26] Given the greater discretion granted to the Town by Indiana Code subsection 36-9-23-25(d), along with the presumption that a municipality is presumed to have a power that has not been expressly taken away, we conclude that *High Meadows* no longer stands for the broad proposition that the burden of future growth in a sewer system cannot be placed primarily on new users. It seems to us that when the Town was deciding what the 2018 SDC would be, planning for future growth easily qualifies as "[a]ny other factor[] the legislative body considers necessary." Ind. Code § 36-9-23-25(b)(10).

# II. Annual Increase in the SDC

Finally, Builders contend that the automatic yearly 2% increase in the SDC in Ordinance No. G-18-04 violates Indiana law. Indiana Code section 36-9-23-26 provides, in part, as follows:

> (a) After the introduction of the ordinance establishing fees under section 25 of this chapter, but before it is finally adopted, the municipal legislative body shall hold a public hearing at which users of the sewage works, owners of property served or to be served by the works, and other interested persons may be heard concerning the proposed fees.
>
> [….]
>
> (b) After the hearing, the municipal legislative body shall adopt the ordinance establishing the fees, either as originally introduced or as modified.
>
> [….]
>
> (d) The municipal legislative body may change or readjust the fees in the same manner by which they were established.

As the Indiana Supreme Court has recognized, the statute requires that "a municipal legislative body must hold a public hearing before revising sewer rates." *Farley Neighborhood Ass'n v. Town of Speedway*, 765 N.E.2d 1226, 1231 (Ind. 2002).

We have little trouble concluding that Builders are correct on this point. The 2% annual increase in the SDC is a revision of a fee, one that occurs without a public hearing. The Georgetown Town Council, even though it passed only one ordinance, is nonetheless revising the fee each year without a hearing. "If there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that

manner." Ind. Code § 36-1-3-6. So, the Georgetown Town Council may only "change or readjust the fees in the same manner by which they were established[,]" Indiana Code section 36-9-23-26(d), *i.e.*, following a public hearing. We conclude that the automatic 2% annual increase in the SDC in Ordinance No. G-18-04 violates Builders' due process rights and is invalid.

[29] The Town argues, without reliance on authority, that the Builders' challenge to the automatic increase in the SDC should be rejected as speculative because the Town could enact a new ordinance at some point in the future. The Town also argues that the automatic-increase clause is not yet ripe for review because it set the 2018 SDC lower than Baldessari's original proposed SDC and it will take several years of automatic increases for the SDC to reach that figure. We find neither of these arguments to be compelling. Put simply, whether there may be a new ordinance in ten years or whether Builders should count themselves lucky that the SDC was not set higher in the first place are things that have nothing to do with whether the Town has the authority to revise the SDC without a hearing, which it does not.

# Conclusion

[30] We conclude that the base SDC set by Ordinance No. G-18-04 is neither arbitrary, capricious, nor contrary to Indiana law. Ordinance G-18-04's automatic 2% yearly increase in the SDC, however, violates relevant Indiana

law because it provides for a fee increase without a hearing.[2]  It is not disputed that one such automatic increase has already occurred, so we remand with instructions for the trial court to enjoin the Town from collecting the additional 2% unless and until an increase in the SDC has been approved and enacted following a public hearing.[3]

[31]  The judgment of the trial court is affirmed in part and reversed in part, and we remand with instructions.

Altice, J., and Tavitas, J., concur.

---

[2]  Our disposition of the claim regarding the automatic increase has no effect on the other provisions of Ordinance No. G-18-04.  "If any section of this code now enacted or subsequently amended or its application to any person or circumstances is held invalid, the invalidity does not affect other sections that can be given effect without the invalid section or application."  GEORGETOWN, IND., CODE OF ORDINANCES § 10.06(A).

[3]  In addition to nine enumerated powers (which do not include ordering an injunction), Indiana Rule of Appellate Procedure 66(C)(10) empowers us to "grant any other appropriate relief" in disposing of an appeal.