

FILED

Feb 07 2020, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Support of J.O., <br> Abriel Theresa Jenika Gonzalez, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Johnathan Michael Ortiz, <br> *Appellee-Respondent* | February 7, 2020 <br><br> Court of Appeals Case No. <br> 19A-JP-1957 <br><br> Appeal from the St. Joseph Circuit Court <br><br> The Honorable William L. Wilson, Magistrate <br><br> The Honorable John Broden, Judge <br><br> Trial Court Cause No. <br> 71C01-1811-JP-110 |

**Baker, Judge.**

Johnathan Ortiz (Father) signed a paternity affidavit at the time of the birth of the child (Child) of Abriel Gonzalez (Mother), though he suspected at that time that he was not Child's biological father. Over two years later, after the State initiated a child support proceeding on Mother's behalf, Father asked that the proceeding be dismissed and that he be removed from the birth certificate. The trial court granted Father's motion to dismiss. The State now appeals, arguing that the trial court erred by finding that Father is entitled to relief. We agree with the State. Therefore, we reverse and remand for further proceedings.

## Facts

Child was born on April 26, 2017. Mother had previously told Father that he was Child's biological Father, but "he had some questions in his mind" as to the truth of her assertion. Appellant's App. Vol. II p. 18. While he was at the hospital, Father asked for a DNA test, but was told that he would have to go somewhere else for the test. Father "apparently liked the idea of being a father," so when Mother allegedly told him that he would not be able to see Child if he did not sign the paternity affidavit, he agreed to sign even though he suspected that he was not Child's biological father. *Id.* He did not read the affidavit before he signed it. Among other things, the affidavit states as follows:

> 1. A man should NOT sign this form if he is not sure he is the biological father. I may seek a genetic test before signing this form. Signing a Paternity Affidavit is voluntary. I may not be able to reverse paternity and the legal responsibilities of support associated with it, once I sign a Paternity Affidavit.

13.     A man has the right to withdraw/rescind his
        acknowledgement of paternity only within sixty (60) days
        of the date the Paternity Affidavit is completed. . . . After
        sixty (60) days the father may not be able to reverse
        paternity *even if genetic tests prove he is not the biological father*.

*Id.* at 11 (emphases original).

[3]     In May 2017, Father obtained a home DNA test kit from a local pharmacy; the results of the test allegedly showed that Father is not Child's biological father. Father informed Mother of the result, but she denied that it was accurate. In April 2018, Father submitted genetic samples to a certified laboratory. This test also showed that Father is not Child's biological father. Mother again denied that the test was accurate.

[4]     At some point in 2018, Mother asked the St. Joseph County prosecutor to initiate a child support proceeding. Mother stated that she took this action because she wanted a court-sanctioned genetic test, which she believed would show that Father was Child's biological father.

[5]     In November 2018, the prosecutor's office filed a petition to establish child support. On January 7, 2019, Father moved to dismiss the petition and to have his name removed from Child's birth certificate. On March 6, 2019, the trial court ordered the parties to submit to genetic testing. It based this order on a finding that there was a mistake of material fact in connection with the execution of the paternity affidavit—namely, Mother's mistaken belief that

Father is Child's biological father. The trial court found that Father did not show duress or fraud in connection with the affidavit, specifically noting that the evidence in the record did not support a conclusion that Mother "made a knowing misrepresentation of fact concerning the biological father of the child . . . ." *Id.* at 21. On August 7, 2019, the trial court granted Father's motion to dismiss because the genetic test results showed that Father is not Child's biological father.[1] The State now appeals.

## Discussion and Decision

[6] The State suggests that Father's motion to dismiss the child support petition is akin to a motion to dismiss for failure to state a claim under Indiana Trial Rule 12(B)(6). We agree that at its heart, the motion is, indeed, a Trial Rule 12(B)(6) motion to dismiss. But we note that the trial court held an evidentiary hearing at which Mother and Father both testified, and it relied on evidence beyond the face of the petition—specifically, the testimony and the subsequent genetic test results—in dismissing it. Trial Rule 12(B) provides that if, following a Trial Rule 12(B)(6) motion to dismiss, matters outside the pleading are presented to and not excluded by the trial court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

---

[1] It does not appear that the trial court ruled on Father's request to be removed from Child's birth certificate.

[7] Therefore, we will treat the trial court's order as a summary judgment order entered in Father's favor. Our standard of review on summary judgment is well settled:

> The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind. 2002).

*Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

[8] Additionally, we note that Father has not filed an appellee's brief. We will not undertake the burden of developing arguments on his behalf and will reverse if the State establishes prima facie error, meaning error at first sight, on first appearance, or on the face of it. *WindGate Props., LLC v. Sanders*, 93 N.E.3d 809, 813 (Ind. Ct. App. 2018).

[9] The paternity statute provides that "if a man has executed a paternity affidavit in accordance with this section, the executed paternity affidavit conclusively establishes the man as the legal father of a child without any further

proceedings by a court." Ind. Code § 16-37-2-2.1(p). The statute further provides that "a man who is a party to a paternity affidavit executed under this section may, within sixty (60) days of the date that a paternity affidavit is executed under this section, file an action in a court with jurisdiction over paternity to request an order for a genetic test." *Id.* at -2.1(k). A properly executed paternity affidavit may not be rescinded more than sixty days after the execution unless (1) a court determines that fraud, duress, or material mistake of fact existed in the execution of the affidavit; and (2) a genetic test indicates that the man is excluded as the father of the child. *Id.* at -2.1(l).

[10] Because Father's request to rescind the paternity affidavit took place more than sixty days after the execution of the affidavit, he must establish fraud, duress, or material mistake of fact in connection with the execution. "Time and again," this Court has "emphasized that allowing a party to challenge paternity when the party has previously acknowledged himself to be the father should only be allowed in extreme and rare circumstances." *In re Paternity of T.H.*, 22 N.E.3d 804, 808 (Ind. Ct. App. 2014).

[11] The trial court found no evidence of fraud or duress, and we agree that the evidence in the record does not support such claims. We must determine, therefore, whether the record supports a conclusion that there was a material mistake of fact. In *In re Paternity of B.M.*, this Court considered a father who signed paternity affidavits for two children. 93 N.E.3d 1132 (Ind. Ct. App. 2018). When he signed the first affidavit, he knew that he was not the biological father; and when he signed the second, he was aware of the

possibility that he was not the child's biological father. *Id.* at 1136. He failed to act within sixty days of execution and instead waited for years, until the mother sought child support. Under these circumstances—which are strikingly like the case at hand—this Court found that the father did not prove that, in relevant part, there was a mistake of material fact in connection with the execution of the affidavits. *Id.*

[12] In another parallel, the *B.M.* trial court ordered a genetic test at the father's request; the test showed that he was excluded as the biological father of the children. *Id.* This Court noted that our Supreme Court has found that a legal father may only challenge paternity in extreme and rare instances and that the challenge must be based upon evidence that has become "available independently of court action." *Fairrow v. Fairrow*, 559 N.E.2d 597, 600 (Ind. 1990); *see also In re Paternity of K.M.*, 651 N.E.2d 271, 276 (Ind. Ct. App. 1995) (holding that "one who comes into court to challenge an otherwise valid order establishing paternity, without medical proof inadvertently obtained through ordinary medical care, should be denied relief as outside the equitable discretion of the trial court"). This Court has interpreted that guidance to mean "that the evidence establishing non-paternity was not actively sought by the putative father, but was discovered almost inadvertently in a manner that was unrelated to child support proceedings." *Tirey v. Tirey*, 806 N.E.2d 360, 363 n.2 (Ind. Ct. App. 2004). In *B.M.*, as in the case before us, the father sought genetic testing solely to contest his paternity of the children. Therefore, this Court found that there was no evidence of non-paternity that had been inadvertently

obtained through ordinary medical care unrelated to paternity, and father was not entitled to have the paternity judgments set aside. 93 N.E.3d at 1137.

[13] In this case, Father suspected at the time he signed Child's paternity affidavit that he was not the biological father. He even requested a DNA test at the hospital but was told he would have to do that elsewhere. Within a month of Child's birth, Father obtained a home DNA test kit from a pharmacy. Despite all of this, he failed to file a judicial action within sixty days of the execution of the affidavit. During the ensuing months and years, he obtained another DNA test, this time from a certified laboratory. But it was not until Mother requested child support that he finally sought redress with the trial court. We simply cannot find that these facts constitute the extreme and rare circumstances required to set aside paternity after the sixty-day window has closed. As in *B.M.*, the only reason Father sought genetic testing was to contest his paternity, meaning that the evidence establishing non-paternity was discovered intentionally rather than inadvertently.

[14] This Court has noted that in a situation like this one, where setting aside paternity would leave a child fatherless, then the child would be a "filius nullius," meaning a "son of nobody." *In re Paternity of E.M.L.G.*, 863 N.E.2d 867, 870 (Ind. Ct. App. 2007). The paternity statute was "created to avoid such an outcome, which could carry with it countless 'detrimental emotional and financial effect[s].'" *Id.* (quoting *Johnson Controls, Inc. v. Forrester*, 704 N.E.2d 1082, 1085 (Ind. Ct. App. 1999)). Were the trial court's order in this case to

stand, it would leave Child with no father, which runs counter to Indiana public policy.[2]

[15] We can only find, based upon the plain language of the paternity statute and our Supreme Court's and this Court's interpretations thereof, that the trial court erred by granting Father's motion to dismiss. Father is Child's legal father with all attendant legal consequences, and it is too late now to find otherwise.

[16] The judgment of the trial court is reversed and remanded for further proceedings.

Riley, J., and Brown, J., concur.

---

[2] There is, of course, also a public policy in favor of correctly identifying a child's biological parents. And indeed, a putative father may be entitled to file a paternity action against the child's legal mother and father. *In re Paternity of S.R.I.*, 602 N.E.2d 1014, 1016 (Ind. 1992). The public policy of correctly identifying the child's biological parents applies when the paternity action would prove that *someone* is the biological father, rather than in a case like this one, where the child would be left fatherless.