## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 30 2020, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joe Keith Lewis
Lewis & Foust, LLP
Marion, Indiana

ATTORNEYS FOR APPELLEE
STATE OF INDIANA

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Paternity of B.L.H.:

B.F.H.,
*Appellant,*

v.

K.E.G., et al.,
*Appellees.*

October 30, 2020

Court of Appeals Case No.
20A-JP-1122

Appeal from the Grant Superior Court

The Honorable Dana J. Kenworthy, Judge

The Honorable Brian F. McLane, Magistrate

Trial Court Cause No.
27D02-1908-JP-113

**Bailey, Judge.**

# Case Summary

[1] B.F.H. ("Father") appeals the trial court order denying his petition to rescind his paternity affidavit and request for genetic testing. He raises two issues on appeal, but we address only the following restated, dispositive issue: whether the trial court erred when it denied his petition.

[2] We affirm.

# Facts and Procedural History

[3] B.L.M. ("Child") was born on September 4, 2018. K.E.G. ("Mother") and Father executed a paternity affidavit for Child two days later, on September 6, 2018. In December 2018, when Child was three months old, Father and Mother ended their romantic relationship. Father subsequently obtained a mail-in two-party genetic test through DNA Direct Solutions that involved only him and Child. Father obtained this test on his own more than sixty days after he signed the paternity affidavit. The test results allegedly indicated that there was a zero probability that Father was Child's biological father. Father did nothing with the test results when he first received them.

[4] On August 1, 2019, the State of Indiana, on behalf of Mother, filed a petition to establish child support. At the September 26, 2019, hearing on the petition, Father requested genetic testing, and his request was denied. On October 7, 2019, the trial court entered a judgment of support directing Father to pay $285 per week and established an arrearage of $2,568. On November 8, 2019, Father

filed a petition to rescind his paternity affidavit and a request for genetic testing,[1] attaching the private DNA test as an exhibit.[2]

[5] On January 9, 2020, the trial court held a hearing on Father's petition. At the hearing, Mother testified in relevant part as follows:

> [Father] knew in the hospital when he signed that paternity affidavit that there was a chance that [Child] was not his. He knew and he refused a DNA test at the hospital.… He knew there was a chance due to us breaking up for three months, that there was a chance that he wasn't the father because we got back together. He said that he didn't want a DNA test, he did not want a DNA test, he was her's [sic] regardless[,] those was [sic] his words.… This is not about him not wanting to be [Child's] dad, this is about his paycheck and not wanting to, he was perfectly fine being her legal father, he came to my house multiple times saying he did want to be her dad and asking me if he could be her dad. And it was all his idea to be her father until I put him on child support.

Tr. at 15-16. Mother further testified that she had reached out to Child's alleged biological father and he "refuses to be [Child's] father." *Id*. at 18. Father testified that he "didn't think there was any chance that [he] was not the Father," although Mother had "told [him] that she had been sleeping with somebody else." *Id*. at 17.

---

[1] Although Father's petition does not state a request for genetic testing, the trial court "interpret[ed it] as a request for genetic testing." Tr. at 17.

[2] Father offered the private DNA test as an exhibit at the hearing on his petition, but it was not entered into evidence. Tr. at 13-14.

[6] In an order dated May 11, 2020, the trial court denied Father's petition to rescind his paternity affidavit and request for genetic testing. In doing so, the court cited the parties' testimony and stated, in relevant part:

* * *

13. Respondent seeks to bolster his allegation of a material mistake of fact by relying on a genetic test he obtained without court approval.

14. The court recognizes there is a substantial public policy favoring the correct identification of a biological father.

15. However, Respondent['s] reliance on the genetic test obtained without court approval is unjustified. Respondent's argument, if accepted by the court, would render any burden on a man executing a paternity affidavit meaningless. Any man who properly executes a paternity affidavit could obtain a genetic test, without court approval, and then rely on that test to justify their request for a court-ordered genetic test.

16. Further, Respondent was aware that he may not have been the biological father of the child when he executed the paternity affidavit. The court acknowledges that he may have been mistaken when he indicated he thought there was no possibility he was not the father. However, the testimony from both parties indicates Mother informed Respondent that she was involved in a relationship with another man.

The Respondent has failed to show there was duress, fraud or a material mistake of fact to justify the rescission of the paternity affidavit. ACCORDINGLY, Respondent's request to rescind the paternity affidavit and request for genetic testing is denied.

App. at 8. This appeal ensued.

# Discussion and Decision

Father appeals the trial court's denial of his petition to rescind his paternity affidavit and request for genetic testing. Thus, he appeals from a negative judgment, and we will reverse the trial court only if the judgment is contrary to law. *Burnell v. State*, 56 N.E.3d 1146, 1150 (Ind. 2016). A judgment is contrary to law if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Id*. In determining whether the trial court's judgment is contrary to law, we consider the evidence in the light most favorable to the prevailing party, together with all reasonable inferences therefrom. *Id*.

Moreover, the trial court entered special findings and conclusions pursuant to Indiana Trial Rule 52(A). Thus, our standard of review is two-tiered: first, we determine whether the evidence supports the findings, and second whether the findings support the judgment. *In re Paternity of B.M.*, 93 N.E.3d 1132, 1135 (Ind. Ct. App. 2018). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, and we neither reweigh the evidence nor reassess the credibility of the witnesses. *Id*. Rather, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. *Id*.

A paternity affidavit conclusively establishes paternity without further proceedings by a court and gives rise to parental rights and responsibilities regarding the right to obtain child support, health insurance, and parenting

time. Ind. Code § 16-37-2-2.1(j), (p). Indiana Code Section 16-37-2-2.1(k) gives a man sixty days after executing a paternity affidavit to file a court action to request genetic testing. After sixty days have passed, a court may only rescind a paternity affidavit when: (1) the court has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and (2) at the request of the man seeking rescission of his affidavit, the court has ordered a genetic test, which yields a result indicating that the man is excluded as the father of the child. I.C. § 16-37-2-2.1(l); *see also In re Paternity of T.M.*, 953 N.E.2d 96, 99 (Ind. Ct. App. 2011) ("[A] man who executed a paternity affidavit may not fail to timely request genetic testing under Indiana Code section 16-37-2-2.1 and then, as a matter of course, request such testing as a fishing expedition."), *trans. denied*. Moreover, a man who is the legal father by reason of a paternity affidavit may challenge paternity only "in extreme and rare instances," and the challenge must be made by "evidence that has become available independently of court action." *Id*. (quotations and citations omitted); *see also J.O. v. Ortiz*, 141 N.E.3d 1246, 1249 (Ind. Ct. App. 2020).

[11]     Here, the trial court found that no fraud, duress, or material mistake of fact existed in Father's execution of the paternity affidavit. That conclusion is supported by the testimony of both Mother and Father. While Father claims that he made a material mistake of fact when he executed the paternity affidavit because he believed he was Child's biological father, it is undisputed that Mother told Father there was a possibility that he was not the biological father and that Father was aware of that possibility at the time he executed the

paternity affidavit. As is true in other areas of the law, a mistake of fact must be reasonable, and a reasonable mistake of fact is not one in which a party willfully ignores all or some of the relevant facts. *See, e.g.*, I.C. § 35-41-3-7 (emphasis added) ("It is a defense [to a criminal charge] that the person who engaged in the prohibited conduct was *reasonably mistaken* about a matter of fact, if the mistake negates the culpability required for commission of the offense."); Restatement (Second) of Contracts: Mistake Defined § 151 (Am. Law Inst. 1981) (emphasis added) (defining, in the context of contracts, a "mistake" as an "erroneous belief" as to a fact when the party "makes an assumption with respect to [the fact], *without being aware of alternatives*.").

[12] Thus, the evidence supports the trial court's finding that Father did not mistakenly believe at the time he signed the paternity affidavit that he was the only possible biological father of Child; rather, Father was aware of the possibility that he was not. And that finding supports the conclusion that Father failed to prove a mistake of fact pursuant to Indiana Code Section 16-37-2-2.1(l). *See In re Paternity of B.M.*, 93 N.E.3d 1132, 1136 (Ind. Ct. App. 2018) (holding that the father failed to prove a material mistake of fact existed at the time he executed a paternity affidavit where he knew there was a possibility that he was not the child's biological father).

[13] The trial court also correctly concluded that the genetic test Father obtained without court approval did not "bolster" his claim of mistake of fact. App. at 8. First, the results of the test were not admitted into evidence, and Father does not challenge that ruling on appeal. Second, even if it had been admitted, the

result of the genetic test obtained over three months after the paternity affidavit was signed cannot be evidence that a "material mistake of fact existed *in the execution of* the paternity affidavit," i.e., at the time Father signed the affidavit. I.C. § 16-37-2-2.1(l) (emphasis added). And third, any challenge to paternity must be made by evidence that has become "available independently of court action," i.e., by "externally obtained clear medical proof." *Fairrow v. Fairrow*, 559 N.E.2d 597, 600 (Ind. 1990); *see also In re Paternity of E.M.L.G.*, 863 N.E.2d 867, 870 (Ind. Ct. App. 2007). "'Externally obtained' means that the evidence establishing non-paternity was not actively sought by the putative father but was discovered almost inadvertently in a manner that was unrelated to child support proceedings." *Tirey v. Tirey*, 806 N.E.2d 360, 363 n.2 (Ind. Ct. App. 2004), *trans. denied*. Here, there is no question that Father obtained the genetic test solely to challenge his paternity of Child, not inadvertently in the course of obtaining ordinary medical care; thus, the genetic test was not valid medical proof of non-paternity. *Id.*; *see also In re Paternity of K.M.*, 651 N.E.2d 271, 276 (Ind. Ct. App. 1995) (holding that "one who comes into court to challenge an otherwise valid order establishing paternity, without medical proof inadvertently obtained through ordinary medical care, should be denied relief as outside the equitable discretion of the trial court").

# Conclusion

[14] The trial court did not err when it denied Father's petition to rescind his paternity affidavit and request for genetic testing on the grounds that Father

failed to prove that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit per Indiana Code Section 16-37-2-2.1(l).

[15] Affirmed.

Vaidik, J., and Weissmann, J., concur.